Markman, J.
**301 The issue here is whether plaintiffs' collective-bargaining agreements (CBAs) with defendant, Macomb County, granted plaintiffs a vested right to lifetime and unalterable retirement healthcare benefits. The trial court held that while plaintiffs are entitled to lifetime healthcare benefits, defendant can make reasonable modifications to those benefits. On appeal, the Court of Appeals held that plaintiffs are entitled to *607 lifetime and unalterable healthcare benefits and that such benefits cannot be modified absent plaintiffs' consent. Because we conclude that the CBAs did not grant plaintiffs a vested right to lifetime and unalterable benefits, we reverse the judgment of the Court of Appeals and remand to the Macomb Circuit Court for entry of an order granting summary disposition to defendant consistent with this opinion. **302 I. BACKGROUND
This is a class action brought on behalf of approximately 1600 unionized Macomb County employee retirees who worked for defendant under various CBAs dating back to 1989. Plaintiffs claim that in 2009 and 2010 defendant breached these agreements by reducing and altering their healthcare benefits; plaintiffs now seek both monetary damages and injunctive relief. It is undisputed that each CBA contained an express three-year durational provision and that none of the CBAs contained a provision expressly granting a vested right to lifetime and unalterable retirement healthcare benefits. The trial court granted defendant's motion for summary disposition, concluding that while plaintiffs are entitled to lifetime healthcare benefits under the agreements, defendant is permitted to make reasonable modifications to those benefits. The Court of Appeals affirmed in part and reversed in part, concluding that while plaintiffs are entitled to lifetime healthcare benefits, those benefits cannot be modified absent plaintiffs' consent. Kendzierski v. Macomb Co. , 319 Mich. App. 278, 286-289, 901 N.W.2d 111 (2017). We ordered and heard oral argument on whether to grant defendant's application for leave to appeal. Kendzierski v. Macomb Co. , 501 Mich. 966, 905 N.W.2d 602 (2018).
II. STANDARDS OF REVIEW
"This Court reviews de novo a trial court's decision on a motion for summary disposition." Bazzi v. Sentinel Ins. Co. , 502 Mich. 390, 398, 919 N.W.2d 20 (2018). "This Court also reviews de novo questions of ... the proper interpretation of a contract." Id.
**303 III. ANALYSIS
It is undisputed that all of the CBAs contain the following provisions or provisions that are "materially similar":[1]
Retirees: The Employer will provide fully paid Blue Cross/Blue Shield Hospital-Medical coverage to the employee and the employee's spouse, after eight (8) years of service with the Employer, for the employee who leaves employment because of retirement and is eligible for and receives benefits under the Macomb County Employees' Retirement Ordinance ....
* * *
Coverage shall be limited to the current spouse of the retiree, at the time of retirement, provided such employee shall retire on or after January 1, 1974. Coverage for the eligible spouse will terminate upon the death of the retiree unless the retiree elects to exercise a retirement option whereby the eligible current spouse receives applicable retirement benefits following the death of the retiree.
Coverage shall be limited to Blue Cross/Blue Shield MVF1 Master Medical with ML Rider, or its substantial equivalence.
*608 * * *
Retired employees and/or their current spouse, upon reaching age 65, shall apply if eligible, and participate in the Medicare Program at their expense as required by the Federal Insurance Contribution Act, a part of the Social Security Program, at which time the Employer's obligation shall be only to provide "over 65 supplemental" hospital-medical benefit coverage. Failure to participate **304 in the aforementioned Medicare Program, shall be cause for termination of Employer paid coverage of applicable hospital-medical benefits, as outlined herein for employees who retire and/or their current spouse.
Employees who retire under the provisions of the Macomb County Employees' Retirement Ordinance, and/or their current spouse, who subsequently are gainfully employed, shall not be eligible for hospital-medical benefits, during such period of gainful employment ....
* * *
The parties acknowledge that during the negotiations which resulted in this Agreement each had the unlimited right and opportunity to make demands and proposals with respect to all subjects of collective bargaining and that all agreements and understandings, expressed, implied, written or oral, are set forth in this Agreement. This Agreement expresses the complete understanding of the Parties on the subject of wages, working conditions, hours of work, benefits and conditions of employment.
* * *
This Agreement shall continue in full force and effect until December 31, 2007. [Paragraph lettering omitted.]
The issue is whether the CBAs granted plaintiffs vested rights to lifetime and unalterable retirement healthcare benefits. In Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America (UAW) v. Yard-Man, Inc. , 716 F.2d 1476, 1478 (C.A. 6, 1983), the United States Court of Appeals for the Sixth Circuit held that the CBAs at issue in that case granted the plaintiffs vested rights to lifetime and unalterable retirement healthcare benefits. However, as recognized by Arbuckle v. Gen. Motors LLC , 499 Mich. 521, 885 N.W.2d 232 (2016), the United States Supreme Court in **305 M & G Polymers USA, LLC v. Tackett , 574 U.S. 427, 135 S.Ct. 926, 190 L.Ed. 2d 809 (2015), overruled Yard-Man (and its progeny) in an opinion that
characterized [ Yard-Man and its progeny] as "placing a thumb on the scale in favor of vested retiree benefits in all collective-bargaining agreements." Those decisions, the Supreme Court explained, "distort the text of [a collective-bargaining] agreement and conflict with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." Indeed, basic principles of contract interpretation instruct that "courts should not construe ambiguous writings to create lifetime promises" and, absent a contrary intent, that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement." For "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." [ Arbuckle , 499 Mich. at 540, 885 N.W.2d 232, quoting Tackett , 574 U.S. at ----, 135 S.Ct. at 935-937 (quotation marks omitted; second alteration in Arbuckle ).][2 ]
*609 Tackett specifically rejected many of the same arguments raised by plaintiffs in the instant case. For example, Tackett rejected Yard-Man 's presumption that a general durational clause, which specifies when a contract will expire, states nothing about the vesting of retiree benefits.[3]
**306 Tackett , 574 U.S. at ----, 135 S.Ct. at 937. It also rejected the presumption of vesting based on provisions that: (a) tie eligibility for retirement health benefits to eligibility for a pension, (b) enable continuation of a surviving spouse's healthcare coverage following the death of the retiree, and (c) specify that the employer will pay a retiree's insurance once he or she reaches age 65 when employees could retire at age 55.[4] Id. at ----, 135 S.Ct. at 937.
Yard-Man , 716 F.2d at 1482, held that "if [employees] forego wages now in expectation of retiree benefits, they would want assurance that once they retire they will continue to receive such benefits"; "[a]s such, it is unlikely that such benefits ... would be left to the contingencies of future negotiations." It further held that "when ... parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree." Id. Tackett , 574 U.S. at ----, 135 S.Ct. at 935, 937, rejected these inferences as "inconsistent with ordinary principles of contract law," explaining that " Yard-Man 's assessment of likely behavior in collective bargaining is too speculative and too far removed from the context of any particular contract to be useful in discerning the parties' intention" and that the Yard-Man Court "derived its assessment of likely behavior not from record evidence, but instead from its own suppositions about the intentions of employees, unions, and employers negotiating retiree **307 benefits." Furthermore, Tackett held that Yard-Man failed to recognize the traditional principle that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement"[5] and that while "a collective-bargaining agreement may provide in explicit terms that certain benefits continue after the agreement's expiration[,] ... when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." Id. at ----, 135 S.Ct. at 937 (quotation marks, citation, and brackets omitted).
Post- Tackett , "the Sixth Circuit [in Reese v. CNH Indus. N.V. , 854 F.3d 877, 882-883 (C.A. 6, 2017),] held that the same Yard-Man inferences it once used to presume *610 lifetime vesting can now be used to render a collective-bargaining agreement ambiguous as a matter of law, thus allowing courts to consult extrinsic evidence about lifetime vesting." CNH Indus. N.V. v. Reese , 583 U.S. ----, ----, 138 S.Ct. 761, 763, 200 L.Ed. 2d 1 (2018). The United States Supreme Court characterized this new analysis as " Yard-Man re-born, re-built, and re-purposed for new adventures" and again reversed. Id. at ----, 138 S.Ct. at 763 (quotation marks and citation omitted). It held that the Yard-Man inferences could not be used to render a CBA ambiguous. Id. at ----, 138 S.Ct. at 763. Finally, the Supreme Court held that the CBA at issue was unambiguous and that it did not create lifetime healthcare benefits for retirees. Id. at ----, 138 S.Ct. at 766. It observed:
**308 Tellingly, no other Court of Appeals would find ambiguity in these circumstances. When a collective-bargaining agreement is merely silent on the question of vesting, other courts would conclude that it does not vest benefits for life. Similarly, when an agreement does not specify a duration for health care benefits in particular, other courts would simply apply the general durational clause. And other courts would not find ambiguity from the tying of retiree benefits to pensioner status....
Shorn of Yard-Man inferences, this case is straightforward. The 1998 agreement contained a general durational clause that applied to all benefits, unless the agreement specified otherwise. No provision specified that the health care benefits were subject to a different durational clause.... If the parties meant to vest health care benefits for life, they easily could have said so in the text. But they did not. And they specified that their agreement "dispose[d] of any and all bargaining issues" between them. Thus, the only reasonable interpretation of the 1998 agreement is that the health care benefits expired when the collective-bargaining agreement expired in May 2004. "When the intent of the parties is unambiguously expressed in the contract, that expression controls, and the court's inquiry should proceed no further." [ Id. at ----, 138 S.Ct. at 766 (citations omitted; alteration in Reese ).][6 ]
The Court of Appeals in the instant case did exactly what the Sixth Circuit did in Reese , i.e., it relied on the Yard-Man inferences to find the CBAs ambiguous and then resorted to extrinsic evidence to find in favor of **309 lifetime healthcare benefits.[7] *611 Although this Court is not bound to follow the United States Supreme Court's **310 opinion in Reese , we choose to follow it because it is fully consistent with Michigan's own principles of contract law.[8] *612 **311 "Our goal in contract interpretation is to give effect to the intent of the parties, to be determined first and foremost by the plain and unambiguous language of the contract itself." Wyandotte Electric Supply Co. v. Electrical Technology Sys., Inc. , 499 Mich. 127, 143-144, 881 N.W.2d 95 (2016). "If the contractual language is unambiguous, courts must interpret and enforce the contract as written, because an unambiguous contract reflects the parties' intent as a matter of law." In re Smith Trust , 480 Mich. 19, 24, 745 N.W.2d 754 (2008). "However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties." Id.
"A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." Barton-Spencer v. Farm Bureau Life Ins. Co. of Mich. , 500 Mich. 32, 40, 892 N.W.2d 794 (2017). In addition, "if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." Klapp v. United Ins. Group Agency, Inc. , 468 Mich. 459, 467, 663 N.W.2d 447 (2003).[9] However, "ambiguity is a finding of last resort ...." Mayor of the City of Lansing v. Pub. Serv. Comm. , 470 Mich. 154, 165 n. 6, 680 N.W.2d 840 (2004). That is, "a finding of ambiguity is to be reached only after all other conventional means of interpretation have been applied and found wanting." Id. at 165, 680 N.W.2d 840 (quotation marks, citation, and brackets omitted). "[W]e will not create ambiguity where the terms of the contract are clear." Frankenmuth Mut. Ins. Co. v. Masters , 460 Mich. 105, 111, 595 N.W.2d 832 (1999).
**312 "[C]ourts cannot simply ignore portions of a contract ... in order to declare an ambiguity." Klapp , 468 Mich. at 467, 663 N.W.2d 447.
"A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written. " Rory v. Continental Ins. Co. , 473 Mich. 457, 468, 703 N.W.2d 23 (2005). "Courts enforce contracts according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." Id. "The general rule of contracts is that competent persons shall have the utmost liberty of contracting and that their agreements voluntarily and fairly made shall be held valid and enforced in courts." Terrien v. Zwit , 467 Mich. 56, 71, 648 N.W.2d 602 (2002) (quotation marks, citation, and brackets omitted). "When a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." Rory , 473 Mich. at 468-469, 703 N.W.2d 23. "This approach, where judges divine the parties' reasonable expectations and then rewrite the contract accordingly, is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy."
*613 Wilkie v. Auto-Owners Ins. Co. , 469 Mich. 41, 51, 664 N.W.2d 776 (2003). "[T]he rule of reasonable expectations clearly has no application when interpreting an unambiguous contract because a policyholder cannot be said to have reasonably expected something different from the clear language of the contract." Id. at 62, 664 N.W.2d 776.[10]
**313 These contract principles apply to CBAs just as they do with regard to any other contract. As this Court has explained:
The foundational principle of our contract jurisprudence is that parties must be able to rely on their agreements. This principle applies no less strongly to collective bargaining agreements: when parties to a collective bargaining agreement bargain about a subject and memorialize the results of their negotiation in a collective bargaining agreement, they create a set of enforceable rules-a new code of conduct for themselves-on that subject. A party to the collective bargaining agreement has a right to rely on the agreement as the statement of its obligations on any topic covered by the agreement. [ Macomb Co. v. AFSCME Council 25 , 494 Mich. 65, 80, 833 N.W.2d 225 (2013) (quotation marks and citations omitted).]
In Harper Woods Retirees Ass'n v. City of Harper Woods , 312 Mich. App. 500, 512-513, 879 N.W.2d 897 (2015), the Court of Appeals "conclude[d] that the [United States] Supreme Court's reasoning in Tackett is consistent with Michigan's contract jurisprudence regarding CBAs, which applies with equal force in both the public and private sectors." The Court of Appeals rejected the plaintiffs' argument that "their right to the specific healthcare benefits included in their CBAs and contracts continued indefinitely after retirement, regardless of whether the explicit terms of the contracts indicated that the parties intended those benefits to continue after the agreements expired." Id. at 511, 879 N.W.2d 897. Instead, "the language governing retiree healthcare **314 benefits [must] indicate[ ] that the parties intended the same benefits to continue after expiration of the agreements ...." Id. at 513, 879 N.W.2d 897. If the language does not so indicate, "the benefits terminated after expiration of the agreements, so that defendant was permitted to alter the benefits under future contracts." Id.
Post- Tackett , the Sixth Circuit addressed this same issue in Gallo v. Moen Inc. , 813 F.3d 265 (C.A. 6, 2016), cert. den. 580 U.S. ----, 137 S.Ct. 375, 196 L.Ed.2d 293 (2016), and concluded that the CBAs did not provide lifetime and unalterable healthcare benefits to retirees and dependents.[11] The court observed:
First and foremost , nothing in this or any of the other CBAs says that Moen committed to provide unalterable healthcare benefits to retirees and their spouses for life. That is what matters, and that is where the plaintiffs fall short. Tackett directs us to apply ordinary contract principles and not to tilt the inquiry in favor of vesting-a frame of reference that prompts two questions. What *614 is the contract right that the plaintiffs seek to vindicate? And does the contract contain that right? The plaintiffs claim a right to healthcare benefits for life. But the contracts never make that commitment. Yes, Moen offered retirees healthcare benefits. And yes Moen, like many employers, may have wished that business conditions and stable healthcare costs (hope springs eternal) would permit it to provide similar healthcare benefits to retirees throughout retirement. But the question is whether the two parties signed a contract to that effect. Nothing of the sort appears in the collective bargaining agreements.
Second , not only do the CBAs fail to say that Moen committed to provide unalterable healthcare benefits for life to retirees, everything they say about the topic was contained in a three-year agreement. If we do not expect to find "elephants in mouseholes" in construing statutes, we should not expect to find lifetime commitments in time-limited **315 agreements. Each of the CBAs made commitments for approximately three-year terms-well short of commitments for life. Present in each CBA, the general durational clause supplied a concrete date of expiration after which either party could terminate the agreement. When a specific provision of the CBA does not include an end date, we refer to the general durational clause to determine that provision's termination. Absent a longer time limit in the context of a specific provision, the general durational clause supplies a final phrase to every term in the CBA: "until this agreement ends." Reading the healthcare provisions in conjunction with the general durational clause gives meaning to the phrases "[c]ontinued," "will be provided," "will be covered," and the like. These terms guarantee benefits until the agreement expires, nothing more. [ Id. at 269 (citations omitted).]
The Gallo analysis applies equally to the instant case. It is undisputed that none of the CBAs at issue specifies that defendant committed itself to provide lifetime and unalterable healthcare benefits. It is also undisputed that the CBAs contain three-year durational provisions. Therefore, the CBAs guarantee benefits only until the agreements expire and no longer. In other words, because the CBAs do not specify an alternative ending date for healthcare benefits, their general durational clauses control.
The trial court here found that the CBAs are not ambiguous and that "[d]efendant did not promise or otherwise obligate itself under the clear language to provide a certain duration or level of retiree healthcare coverage beyond the term of each CBA." Indeed, it held that "plaintiffs have not pointed to any specific CBA language explicitly conferring lifetime or unalterable healthcare benefits on retirees." Nevertheless, the court held that plaintiffs are entitled to lifetime healthcare benefits because "plaintiffs have proffered unrefuted evidence that defendant has acknowledged that retiree **316 healthcare coverage is a lifetime benefit." Finally, the trial court held that these lifetime benefits are not unalterable because "plaintiffs have not established [that] defendant has unequivocally acknowledged that it is obligated to provide[ ] unalterable retiree healthcare coverage." The court concluded that while "retirees have lifetime healthcare benefits," defendant "may reasonably modify the scope and level of benefits from those that existed when the retirees retired."
While the trial court correctly held that the CBAs are not ambiguous and that they do not provide for unalterable lifetime healthcare benefits, it nonetheless relied on extrinsic evidence to conclude *615 that plaintiffs are entitled to lifetime benefits that can be reasonably modified. However, since the CBAs are not ambiguous, the trial court should not have considered extrinsic evidence because the "parol evidence rule ... prohibits the use of extrinsic evidence to interpret unambiguous language within a document." Shay v. Aldrich , 487 Mich. 648, 667, 790 N.W.2d 629 (2010) ; see also In re Smith Trust , 480 Mich. at 24, 745 N.W.2d 754.
Although the Court of Appeals recognized that the "CBAs do not expressly state whether the benefits were promised indefinitely or only for the duration of the CBA," it concluded that "other contract language creates a latent ambiguity regarding whether the healthcare benefits are vested." Kendzierski , 319 Mich. App. at 286, 901 N.W.2d 111. Given this "latent ambiguity," the Court held that the "trial court properly examined extrinsic evidence to determine the meaning of the CBAs" and properly concluded on this basis that the retirees are entitled to lifetime healthcare benefits. Id. at 286-287, 901 N.W.2d 111. However, the appellate court held that the trial court erred by holding that these benefits **317 could be modified absent plaintiffs' consent because a party may not unilaterally alter vested rights. Id. at 288-289, 901 N.W.2d 111.
Respectfully, the Court of Appeals erred by finding a latent ambiguity. "A latent ambiguity ... is one that does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." Shay , 487 Mich. at 668, 790 N.W.2d 629 (quotation marks and citation omitted). In other words, "[a] latent ambiguity exists when the language in a contract appears to be clear and intelligible and suggests a single meaning, but other facts create the necessity for interpretation or a choice among two or more possible meanings." Id. (quotation marks and citations omitted). Here, the Court of Appeals relied on language within the contract itself to find an ambiguity. Therefore, the Court of Appeals actually found a patent ambiguity, not a latent ambiguity, because the former arises "from the face of the document." Id. at 667, 790 N.W.2d 629.[12] Nevertheless, the **318 Court of Appeals erred by finding even a patent ambiguity. As the trial court correctly held, the CBAs here are unambiguous.
The Court of Appeals rested its ambiguity conclusion on three provisions of the CBAs: (a) "the CBAs contain a 'survivor' option permitting continuation of a surviving spouse's healthcare coverage following the death of the retiree," (b) "the CBAs provide that the agreement may be terminated if the retiree fails to enroll in Medicare at age 65," and (c) "the CBAs provide that healthcare coverage is suspended *616 while the retiree has coverage through another employer but then states that coverage through the CBA recommences once the coverage through the other employer ends." Kendzierski , 319 Mich. App. at 286, 901 N.W.2d 111. On the basis of these provisions, the Court of Appeals concluded that the CBAs were ambiguous as to "whether the parties intended for the retiree benefits to vest ...." Id.
We do not agree that these provisions render the CBAs ambiguous. The first provision relied on by the Court of the Appeals-the surviving-spouse provision-reads:
Coverage shall be limited to the current spouse of the retiree, at the time of retirement, provided such employee shall retire on or after January 1, 1974. Coverage for the eligible spouse will terminate upon the death of the retiree unless the retiree elects to exercise a retirement option whereby the eligible current spouse receives applicable retirement benefits following the death of the retiree.
The Court of Appeals concluded that because the provision "contemplates that coverage will continue until, and even after, the death of the retiree," it "indicates that the parties intended that the healthcare coverage would last beyond the three-year term of the individual CBAs." Kendzierski , 319 Mich. App. at 286, 901 N.W.2d 111. In our judgment, **319 however, the text of the provision does not warrant this conclusion because it only speaks to the disposition of retiree benefits upon the death of the retiree, which could occur within the three-year duration of the CBAs.
The United States Court of Appeals for the Seventh Circuit, in considering a similar surviving-spouse provision, stated as follows:
The retirees argue that the [collective-bargaining insurance agreement] is implicitly extended beyond its three-year term by a clause that provides benefits for surviving spouses until their death or remarriage. This provision, however, refers to the eligibility of individuals to receive benefits under the agreement, not to the duration of the agreement. Surviving spouses were eligible to receive benefits only so long as the [collective-bargaining insurance agreement] was in place. [ Cherry v. Auburn Gear, Inc. , 441 F.3d 476, 483 (C.A. 7, 2006).][13 ]
Similarly, the surviving-spouse provision of the CBAs in this case governs the eligibility of the spouse upon **320 the death of the retiree; it does not set the duration of either the retiree's or the spouse's benefits. Therefore, the provision does not evidence an intention that the benefits continue beyond the term provided in the *617 durational clause of the CBAs.[14]
The Court of Appeals' reliance on the provision requiring enrollment in Medicare at age 65 is also unavailing. That provision states:
Retired employees and/or their current spouse, upon reaching age 65, shall apply if eligible, and participate in the Medicare Program ... at which time the Employer's obligation shall be only to provide "over 65 supplemental" hospital-medical benefit coverage. Failure to participate in the aforementioned Medicare Program, shall be cause for termination of Employer paid coverage of applicable hospital-medical benefits, as outlined herein for employees who retire and/or their current spouse.
The Court of Appeals reasoned that "[t]his provision again contemplates that the coverage outlasts the three-year period of the CBA given that a retiree may retire years before turning 65." Kendzierski , 319 Mich. App. at 286, 901 N.W.2d 111. But the Sixth Circuit in Serafino v. City of Hamtramck , 707 F. Appx. 345 (C.A. 6, 2017), considered **321 and rejected a similar argument.[15] The provision at issue in that case stated that the employer would pay retirees' medical expenses " 'until that retired employee attains the age of sixty-five (65) or is eligible for Medicare or Medicaid.' " Id. at 348. The Sixth Circuit concluded that rather than indicating any intention that the retiree benefits vest, the provision served only to " 'guarantee[ ] benefits until the agreement expires, nothing more.' " Id. at 352 (emphasis omitted), quoting Gallo , 813 F.3d at 269. The provision at issue here, by contrast, does not contain even a guarantee of benefits for the duration of the agreement but, rather, conditions continued benefits upon enrollment in Medicare if a retiree reaches age 65 within the duration of the CBA.[16] We are not persuaded that this provision demonstrates that benefits will necessarily outlast the expiration of the CBA itself.
Finally, we also do not find that the subsequent-employment provision creates an ambiguity as to whether the parties *618 intended that retiree benefits would vest. It states:
**322 Employees who retire under the provisions of the Macomb County Employees' Retirement Ordinance, and/or their current spouse, who subsequently are gainfully employed, shall not be eligible for hospital-medical benefits, during such period of gainful employment ....
The Court of Appeals identified in this provision an implication "that the retirees will receive healthcare benefits far beyond the three-year term of the CBAs." Kendzierski , 319 Mich. App. at 286, 901 N.W.2d 111. This is not a necessary implication, however, because a retiree might alternatively obtain coverage through another employer before the three-year term of the CBA expires. Moreover, as explained in Reese , we are not engaged here in a search for any implication that benefits continue past the expiration of the CBA itself but, rather, are seeking provisions that, taken as a whole, reasonably and clearly indicate that the retiree benefits are to continue beyond the duration of the CBAs. Reese , 583 U.S. at ----, 138 S.Ct. at 766 ("Shorn of Yard-Man inferences, this case is straightforward. The 1998 agreement contained a general durational clause that applied to all benefits, unless the agreement specified otherwise. No provision specified that the health care benefits were subject to a different durational clause.").
Contrary to the Court of Appeals' analysis, none of these provisions gives rise to an ambiguity.[17] Each of **323 the events addressed *619 in these provisions could occur during the three-year duration of the CBAs. That each **324 of these events could occur beyond that period does not indicate that the parties intended coverage to last beyond the term of the CBAs. Moreover, reading these provisions as encompassing events beyond the duration of the CBAs would obviously give rise to what we view as an altogether unnecessary conflict between these provisions and the general durational provision of the CBAs, when both a more reasonable and a more harmonious understanding can be achieved using the interpretive analysis previously set forth in this opinion. See, e.g., Singer v. Goff , 334 Mich. 163, 168, 54 N.W.2d 290 (1952) (recognizing "the cardinal principle which requires us to construe this contract as a whole and give harmonious effect, if possible, to each word and phrase"). See also Barton v. Constellium Rolled Prod.-Ravenswood, LLC , 851 F.3d 349, 357 (C.A. 4, 2017) ("One can reconcile the dependent coverage provision with the durational language by reading the former to terminate benefits for a retiree's dependents at the time of the retiree's death, while the benefits for dependents of surviving retirees terminate at the end of the CBA. This reading seems the likelier manifestation of the parties' intent, both because it harmonizes the purportedly conflicting provisions and because the dependent coverage sections of the [summary plan description] contain nothing explicit about vesting."). Therefore, simply because these events could occur beyond the duration of the CBAs does not lead us to conclude that the parties intended such coverage to last in perpetuity. Accordingly, these provisions do not render the CBAs ambiguous.[18] **325 The CBAs contain a general three-year durational clause, and no provision specifies that the benefits in dispute are subject to any different duration. If the parties meant to vest healthcare benefits for life, they easily could have said so in the CBAs, but they did not.[19] The CBAs specify that "all agreements and understandings, *620 expressed, implied, written or oral, are set forth in this Agreement" and that "[t]his Agreement expresses the complete understanding of the Parties on the subject of ... benefits ...." Therefore, the only reasonable interpretation of the CBAs is that the contractual right to healthcare benefits expired when the CBAs expired.[20] This holding is consistent with our holding in Arbuckle that given the durational clauses at issue, the provisions that prohibited the coordination of benefits terminated when the agreements expired.[21] Arbuckle , 499 Mich. at 541-543, 885 N.W.2d 232. It is also **326 consistent with Tackett , which held that "contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement" and that while "a collective-bargaining agreement may provide in explicit terms that certain benefits continue after the agreement's expiration[,] ... when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." Tackett , 574 U.S. at ----, 135 S.Ct. at 937 (quotation marks, citation, and brackets omitted). Because the CBAs at issue here do not indicate that the provided benefits are to continue after the agreement's expiration, this Court will not infer that the parties intended those benefits to vest for life. Instead, we hold that the contractual obligations provided therein expired when the CBAs expired.
IV. CONCLUSION
Because we conclude that the CBAs did not grant plaintiffs a vested right to lifetime and unalterable retirement healthcare benefits, in lieu of granting leave to appeal, we reverse the judgment of the Court **327 of Appeals and remand to the Macomb Circuit Court for entry of an order granting summary disposition to defendant consistent with this opinion.
Zahra, Viviano, and Clement, JJ., concurred with Markman, J.

At oral argument before this Court, defense counsel indicated that all of the pertinent CBAs contain "similar provisions" and that there is no "dispute as to the nature of the provisions in this case"; plaintiffs' counsel also stated that the CBAs are "materially similar."

In Arbuckle , 499 Mich. at 525, 885 N.W.2d 232, this Court, applying federal law, held that the defendant was allowed to "coordinate plaintiff's disability pension benefits because the parties' collective-bargaining agreements and the subsequent modifications thereto did not vest plaintiff's right to uncoordinated benefits." That is, pursuant to express durational clauses within the agreements, we held that provisions that prohibited coordination of benefits terminated when the agreements expired. Id. at 541-543, 885 N.W.2d 232.

Yard-Man , 716 F.2d at 1482-1483, held that given that a general durational clause does not specifically pertain to the duration of retiree benefits, it is outweighed by other considerations. Subsequently, Noe v. PolyOne Corp. , 520 F.3d 548, 555 (C.A. 6, 2008), abrogated by Tackett , 574 U.S. ----, 135 S.Ct. 926, held that "[a]bsent specific durational language referring to retiree benefits themselves, a general durational clause says nothing about the vesting of retiree benefits." (Quotation marks and citation omitted; alteration in Noe .)

Tackett also rejected the argument that retiree healthcare benefits constitute a form of "deferred compensation." Tackett , 574 U.S. at ----, 135 S.Ct. at 936.

See Litton Fin. Printing Div. v. Nat'l Labor Relations Bd. , 501 U.S. 190, 206, 111 S.Ct. 2215, 115 L.Ed. 2d 177 (1991) ("[A]n expired contract has by its own terms released all its parties from their respective contractual obligations ....").

In Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America v. Kelsey-Hayes Co. , 854 F.3d 862, 868-871 (C.A. 6, 2017), the Sixth Circuit held that the CBA at issue in that case was also "ambiguous" regarding retiree healthcare benefits and that the extrinsic evidence indicated that the parties intended the CBA to provide lifetime healthcare benefits. However, the United States Supreme Court vacated the Sixth Circuit's decision and remanded the case for reconsideration in light of its decision in Reese . Kelsey-Hayes Co. v. Int'l Union, United Auto., Aerospace & Agricultural Implement Workers of America , 583 U.S. ----, 138 S.Ct. 1166, 200 L.Ed. 2d 313 (2018).

The dissent distinguishes Tackett on the ground that Tackett "did not address whether there was ambiguity in the parties' CBA ...." However, Reese , 583 U.S. at ----, 138 S.Ct. at 763, expressly held that "the same Yard-Man inferences ... once used to presume lifetime vesting [until rejected by Tackett cannot] now be used to render a collective-bargaining agreement ambiguous ... about lifetime vesting." That is, Reese very clearly held that the reasoning in Tackett applies equally when the question is whether a CBA is ambiguous about lifetime vesting.
The dissent also asserts that Reese is distinguishable because the "CBA [in Reese ] differed from those here in one important respect that mattered to the Court's analysis: it included language that specifically tied the promise of retiree healthcare to the agreement's general durational clause." We respectfully disagree. In Reese , a group benefit plan was incorporated into the CBA by language providing that the group benefit plan " 'will run concurrently with this Agreement and is hereby made a part of this Agreement.' " Reese v. CNH Indus. N.V. , 854 F.3d 877, 889 (C.A. 6, 2017) (emphasis omitted), rev'd 583 U.S. ----, 138 S.Ct. 761, 200 L.Ed.2d 1 (2018). Because the group benefit plan was a separate agreement from the CBA, this language was necessary to incorporate the group benefit plan into the CBA and to indicate that it would be subject to the same durational provision of the CBA. Furthermore, although Reese referred to this provision, it was by no means viewed by the Court as dispositive as evidenced by its single reference to this language in its analysis (as compared to the dissent's five references to such language or the lack of such language in its analysis). Instead, Reese held that the CBA "contained a general durational clause that applied to all benefits, unless the agreement specified otherwise," which it did not. Reese , 583 U.S. at ----, 138 S.Ct. at 766. As both Tackett and Reese held, " 'contractual obligations will cease, in the ordinary course, upon termination of the bargaining agreement.' " Id. at ----, 138 S.Ct. at 763, quoting Tackett , 574 U.S. at ----, 135 S.Ct. at 937 (quotation marks and citation omitted). Accordingly, "when an agreement does not specify a duration for health care benefits in particular, ... courts [should] simply apply the general durational clause." Reese , 583 U.S. at ----, 138 S.Ct. at 766. This is true regardless of whether there is a provision specifically tying the contractual obligation to the general durational clause because "[a]bsent a longer time limit in the context of a specific provision, the general durational clause supplies a final phrase to every term in the CBA: 'until this agreement ends.' " Gallo v. Moen Inc. , 813 F.3d 265, 269 (C.A. 6, 2016), cert. den. 580 U.S. ----, 137 S.Ct. 375, 196 L.Ed.2d 293 (2016) (emphasis added). See also Cooper v. Honeywell Int'l, Inc. , 884 F.3d 612, 618 (C.A. 6, 2018) ("[A] general durational clause should be 'applied to all benefits, unless the agreement specified otherwise.' ") (emphasis added), quoting Reese , 583 U.S. at ----, 138 S.Ct. at 766 ; Cole v. Meritor, Inc. , 855 F.3d 695, 701 (C.A. 6, 2017) (" 'In the absence of specific language in the retiree healthcare provisions, the general durational clause controls.' "), quoting Gallo , 813 F.3d at 272.
Indeed, Tackett , 574 U.S. at ----, 135 S.Ct. at 936, criticized Sixth Circuit decisions that, as with the dissent here, "refused to apply general durational clauses to provisions governing retiree benefits" and instead "requir[ed] a contract to include a specific durational clause for retiree health care benefits to prevent vesting," i.e., to counter the inference that "retiree benefits generally last as long as the recipient remains a retiree ...." Similarly, the dissent here chooses not to apply general durational clauses to provisions governing retiree benefits and instead would obligate the CBAs to include affirmative "language explicitly linking the providing of retiree healthcare benefits to the CBA's durational clause" in order to prevent vesting, i.e., in order to counter the inference that "retirement healthcare was a promise that they would have healthcare for the period of their retirement. " The Sixth Circuit in Yard-Man , 716 F.2d at 1482, relied on that same inference: "when ... parties contract for benefits which accrue upon achievement of retiree status, there is an inference that the parties likely intended those benefits to continue as long as the beneficiary remains a retiree," and Tackett rejected this reasoning. As Tackett explained, such an analysis "distort[s] the text of the agreement and conflict[s] with the principle of contract law that the written agreement is presumed to encompass the whole agreement of the parties." Tackett , 574 U.S. at ----, 135 S.Ct. at 936.

The parties do not dispute that, unlike in Arbuckle , 499 Mich. at 532-536, 885 N.W.2d 232, state law controls here, presumably because while Arbuckle involved the interpretation of CBAs with a private employer, the instant case involves the interpretation of CBAs with a public employer, i.e., a political subdivision of the state. See 29 USC 185(a) (providing that "[s]uits for violation of contracts between an employer and a labor organization" may be brought in federal court); 29 USC 152(2) (excluding from the definition of "employer" in 29 USC 185(a) "any State or political subdivision thereof"); Jackson Transit Auth. v. Local Div. 1285, Amalgamated Transit Union, AFL-CIO-CLC , 457 U.S. 15, 23, 102 S.Ct. 2202, 72 L.Ed. 2d 639 (1982) ("[L]abor relations between local governments and their employees are the subject of a longstanding statutory exemption from the National Labor Relations Act.").

See Mayor of the City of Lansing v. Pub. Serv. Comm. , 470 Mich. 154, 166, 680 N.W.2d 840 (2004) ("[A] provision of the law is ambiguous only if it irreconcilably conflicts with another provision or when it is equally susceptible to more than a single meaning.") (quotation marks, citation, and brackets omitted).

The dissent appears to be relying on the rule of reasonable expectations to discern an ambiguity in the CBAs when it states in several places that plaintiffs "believe[d]," "underst[ood]," and "thought" that they would have healthcare benefits for the rest of their lives. However, what plaintiffs believed, understood, and thought about their healthcare benefits is only relevant to the extent that it is supported by the actual language of the pertinent CBAs. Wilkie , 469 Mich. at 60, 664 N.W.2d 776 ("[O]ne's alleged 'reasonable expectations' cannot supersede the clear language of a contract.").

This Court approvingly cited Gallo in Arbuckle , 499 Mich. at 540 n. 56, 885 N.W.2d 232.

Both defendant's counsel and plaintiffs' counsel acknowledged at oral argument before this Court that the Court of Appeals misused the term "latent ambiguity." The classic example of a latent ambiguity is found in Raffles v. Wichelhaus , 2 Hurl & C. 906; 159 Eng. Rep. 375 (1864), in which the parties contracted for a shipment "to arrive ex Peerless" from Bombay, but, unbeknownst to the parties, there were two ships named "Peerless" sailing from Bombay on that day, which created a latent ambiguity with regard to the ship to which the contract referred. Nothing similar occurred in the instant case. In other words, nothing outside the four corners of the CBAs calls into question the meaning of the language used within the four corners of the CBAs. Indeed, that a Macomb County Executive once stated that defendant "provides retiree health benefits to eligible County retirees (and their eligible beneficiaries) for their lifetimes" is not even inconsistent with our conclusion that the CBAs do not require defendant to provide benefits to eligible retirees (and beneficiaries) for their lifetimes. Defendant, of course, remains free to provide greater benefits to retirees (and beneficiaries) than those required under the CBAs.

Other federal circuits have interpreted surviving-spouse provisions in a similar fashion. See, e.g., Barton v. Constellium Rolled Prod.-Ravenswood, LLC , 851 F.3d 349, 357 (C.A. 4, 2017) ("The pensioned surviving spouses [summary plan description] provision similarly offers the Retirees little help.... This language simply defines a category of people eligible to receive benefits; it says nothing about the duration for which those benefits will last."); Crown Cork & Seal Co. v. Int'l Ass'n of Machinists and Aerospace Workers, AFL-CIO , 501 F.3d 912, 918 (C.A. 8, 2007) (concluding that a surviving-spouse provision did not contain "explicit vesting language"); IUE-CWA v. Gen. Electric Co. , 745 F. Appx. 583, 598 (C.A. 6, 2018) (declining to infer vesting from a surviving-spouse provision). See also Little Chute Area Sch. Dist. v. Wisconsin Ed. Ass'n Council , 2017 WI App 11, 373 Wis. 2d 668, 686-687, 892 N.W.2d 312 (2017) ("[T]he provision is fully compatible with non-vesting, as survivorship benefits would be available if, for example, an individual retiree died during the term of the relevant CBA, or during a longer period if the parties chose to carry over the survivorship benefit in subsequent CBAs.") (citation omitted).

Plaintiffs direct our attention to Bidlack v. Wheelabrator Corp. , 993 F.2d 603 (C.A. 7, 1993), which relied upon a surviving-spouse provision in finding a contract ambiguous as to whether the parties intended retiree benefits to vest. We are not persuaded by plaintiffs' reliance on Bidlack for two reasons. First, the provision at issue in Bidlack , at least arguably, contained durational language-providing that benefits " 'shall be continued for the spouse after the death of the retiree' "-while the provision at issue in our case does not. Id. at 605. Second, Bidlack was decided before Tackett and Reese , and its ambiguity analysis stands in tension with Reese . Compare Bidlack , 993 F.2d at 608 ("[T]he agreements are not silent on the issue [of vesting]; they are merely vague."), with Reese , 583 U.S. at ----, 138 S.Ct. at 766 ("No provision specified that the health care benefits were subject to a different durational clause.").

While Serafino is unpublished, the Sixth Circuit later reaffirmed its analysis in Cooper , 884 F.3d at 618-619, recognizing that Reese confirmed that the Sixth Circuit's reasoning in Serafino was correct.

For this reason, Matthews v. Chicago Transit Auth. , 2016 IL 117638, ¶¶ 83-84, 402 Ill.Dec. 1, 51 N.E.3d 753 (2016), upon which plaintiffs rely, is also distinguishable. The Illinois Supreme Court in that case determined that a provision of the CBA stating that the " 'benefit terminates when the retiree attains age 65' " was a "durational provision" and demonstrated the parties' intent that retiree benefits not be "limited by the durational term of the CBA." Id. In the instant case, by contrast, the provision at issue indicates that failure to enroll in Medicare "shall be cause for termination" of benefits. Thus, unlike the provision at issue in Matthews , the relevant provision here does not supplant the general durational term of the CBA but, instead, sets forth a circumstance wherein retiree benefits will terminate before the expiration of the CBA.

The dissent relies on the same three provisions and concludes that these "imply that the County and the unions intended that healthcare benefits specific to retirees would last for those retirees' entire retirements. " For the reasons explained earlier in this opinion, we disagree. The dissent also contends that these provisions "differentiate these contracts from those at issue in Reese ." However, the dissent fails to recognize that these provisions are similar to provisions at issue in Tackett ; that Tackett rejected the Sixth Circuit's conclusion that these provisions "indicate[ ] an intent to vest retirees with lifetime benefits," Tackett , 574 U.S. at ----, 135 S.Ct. at 933 ; and that Reese , 583 U.S. at ----, 138 S.Ct. at 765, 763, held that "the inferences that this Court rejected in Tackett " cannot be "used to render a collective-bargaining agreement ambiguous ...." The dissent also relies on Alday v. Raytheon Co. , 693 F.3d 772, 785 (C.A. 9, 2012), and Quesenberry v. Volvo Trucks North America Retiree Healthcare Benefit Plan , 651 F.3d 437, 441 (C.A. 4, 2011), for the proposition that an "ambiguity can arise 'where a CBA links eligibility for a particular right "to an event that would almost certainly occur after the expiration of the agreement" ... [because] such linkage "signals the parties' intent to continue retirement benefits notwithstanding expiration." ' " (Alteration in minority opinion.) However, those cases are significantly distinguishable. The provision at issue in Alday , 693 F.3d at 783, at least arguably, contained durational language-" 'the Employer agrees to continue to provide the Comprehensive Medical Plan coverages for which they were covered while active employees, until the retired employee attains age 65' "-while the provisions at issue in our case do not. Furthermore, the provision at issue in Quesenberry tied benefits to an event that was practically certain to occur after the expiration of the CBA-"[i]t is almost inconceivable ... that this negotiated mechanism would be triggered during the scope of the 2005 CBA," Quesenberry , 651 F.3d at 441 -while it is by no means inconceivable that the events addressed in the provisions at issue in our case could take place during the three-year duration of the CBAs. Further, Alday and Quesenberry were decided before both Tackett and Reese , and as noted by the Tackett Court, "when a contract is silent as to the duration of retiree benefits, a court may not infer that the parties intended those benefits to vest for life." Tackett , 574 U.S. at ----, 135 S.Ct. at 937 (emphasis added). Finally, contrary to the dissent's contention, we do "leave[ ] open [the] possibility of ambiguity[.]" For example, if a CBA contained a general durational clause and also a provision, as with the one in Quesenberry , that tied benefits to an event that could only occur or would almost certainly not occur until after the expiration of the CBA, that CBA would be ambiguous (at least in the absence of any other provision that might resolve the ambiguity). Accordingly, contrary to the dissent's suggestion, we do not "condition a finding of ambiguity on whether the agreement contained language expressly disclaiming application of the general durational clause to the promise of retiree healthcare," nor do we require "express language in the CBAs providing a different duration for retiree healthcare ...." But we do require something more than a provision that ties benefits to an event that could conceivably occur after the expiration of the CBA in order to counter a general durational clause, and we simply disagree with the dissent's conclusion that the CBAs at issue here contain provisions that tie benefits to events that could only occur or would almost certainly not occur until after the expiration of the CBAs.

The dissent finds it "odd" that we "interpret[ ] the agreement as giving benefits for only a short time to any employee who retires near the end of a term, whereas an employee who retires near the beginning of the same CBA would be entitled to nearly three years of those very same benefits." However, that is simply how CBAs with a three-year duration operate. In other words, CBAs, by their nature, regularly expire and are replaced with new CBAs, meaning that both employees who retire and new employees who are hired near the end of the CBA will only be covered by the terms of that CBA until that CBA expires.

That the parties have modified the retiree-benefits provisions of the CBAs over time-see Defendant's Supplemental Brief, p. 16 ("[R]etiree healthcare benefits have been modified with nearly every CBA since 1987"); Exhibit 1 to Plaintiffs' Motion for Summary Disposition (tracking modifications to retiree-benefit provisions since 1989)-further evidences that the parties did not intend the benefits to be permanent or unalterable. See Cherry , 441 F.3d at 483 ("[T]he parties' practice of changing the contractual terms in succeeding agreements lends support to [the defendant's] claim that neither party understood the benefits to be permanent or inalterable.").

This Court has already held that there is no constitutional right to retiree healthcare benefits, i.e., that such benefits are not " 'accrued financial benefits' " subject to protection from diminishment or impairment by Const 1963, art 9, § 24, and the parties here do not argue to the contrary. See Studier v. Mich. Pub. Sch. Employees' Retirement Bd. , 472 Mich. 642, 645, 698 N.W.2d 350 (2005).

We recognize that Arbuckle is somewhat distinguishable because in that case the agreements specifically provided that the prohibition against benefit coordination was to continue until the termination or amendment of the agreements, whereas in the instant case the specific provisions pertaining to retiree healthcare benefits are silent regarding their duration. However, as Gallo , 813 F.3d at 269, correctly recognized, "[w]hen a specific provision of the CBA does not include an end date, we refer to the general durational clause to determine that provision's termination." In other words, "[a]bsent a longer time limit in the context of a specific provision, the general durational clause supplies a final phrase to every term in the CBA: 'until this agreement ends.' " Id. See also Gibraltar Sch. Dist. v. Gibraltar MESPA-Transp. , 443 Mich. 326, 328, 505 N.W.2d 214 (1993) ("[A]n agreement to arbitrate does not survive expiration of a collective bargaining contract ...."); Ottawa Co. v. Jaklinski , 423 Mich. 1, 29, 377 N.W.2d 668 (1985) (opinion by Williams , C.J.) ("Jaklinski's right to arbitrate her claim that the Sheriff's failure to reappoint her was not for just cause did not survive the expiration of the collective bargaining agreement.").