*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

Plaintiff-Appellant,

v

ERIC JOHN RYDZEWSKI,

Defendant-Appellee.

FOR PUBLICATION
January 23, 2020
9:05 a.m.

No. 347005
Lapeer Circuit Court
LC No. 18-013179-FH

Before: RIORDAN, P.J., and SAWYER and JANSEN, JJ.

JANSEN, J.

The prosecution appeals by delayed leave granted[1] the order holding defendant's jail term in abeyance pending defendant's successful completion of mental health court. We affirm.

## I. RELEVANT FACTUAL BACKGROUND

Defendant was charged, as a second-offense habitual offender, MCL 769.10, with felon in possession of a firearm (felon-in-possession), MCL 750.224f, felonious assault, MCL 750.82, assaulting, resisting, or obstructing a police officer, MCL 750.81d(1), and two counts of possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. Defendant pleaded no-contest to the felon-in-possession, felonious assault, and assaulting, resisting, or obstructing a police officer charges in exchange for the prosecution dismissing the two felony-firearm charges. The terms of defendant's plea were memorialized in a written plea agreement, which also ambiguously stated, "no mental health [court.]"

At defendant's preliminary examination, the trial court stated the terms of the plea agreement on the record before accepting defendant's plea. When discussing the "no mental health [court]" stipulation with the parties, the trial court stated:

---

[1] *People v Rydzewski*, unpublished order of the Court of Appeals, entered February 25, 2019 (Docket No. 347005).

*The Court:* And the record should indicate very specifically that the prosecutor's office is not up-front consenting to the placement in Mental Health Court. However, [defendant] already has done one stint in Mental Health Court, and the specialty courts have no prohibition from anybody re-entering if the Adult Probation Department makes a determination that that might be his best treatment or as part of his probation.

*Defense Counsel*: Yes, Judge.

*The Court*: Yes. It's very clear that the prosecutor's office is not, as part of this plea, consenting to a placement in Mental Health Court. However, without–without seeing the presentence report, I have–I can't say which way the team is going to want to go, and it's going to be reliant upon that.

*Prosecution*: That's correct, your Honor

After this discussion, the trial court asked whether the terms of the plea agreement, as stated on the record, reflected their "understanding of the total agreement," to which both parties replied in the affirmative. The trial court then accepted defendant's no-contest plea and arranged for sentencing.

At defendant's initial sentencing hearing, the trial court reviewed defendant's presentence investigation report (PSIR) and noted the report recommended defendant as a candidate for mental health court. The prosecution objected, stating it did not consent to defendant's admission to mental health court, and that such a sentence would violate the terms of defendant's plea agreement. The prosecution also stated its intention to withdraw from the plea agreement if the trial court decided to refer defendant to mental health court.

The prosecution did, in fact, file a motion to withdraw from its plea agreement with defendant. The trial court accepted supplemental briefing from both parties, and held a hearing on the prosecution's request to withdraw from the plea agreement. In denying the prosecution's motion to withdraw from the plea agreement, the trial court stated that, because defendant and the prosecution had entered into a plea agreement, not a sentencing agreement, it could accept defendant's no-contest plea while not being bound by any recommended sentence. The trial court also concluded that the plea agreement's terms did not contain a specific agreement that defendant "would or would not be considered for placement" in mental health court, and that the agreement left that determination to the trial court's discretion. Ultimately, defendant was sentenced to two years' probation and a suspended jail term of 365 days, both of which were conditioned on defendant's successful completion of mental health court. This appeal followed.

## II. THE PROSECUTION'S LACK OF CONSENT

On appeal, the prosecution argues that under the terms of the Lapeer County Mental Health Court's governing documents, it has the unilateral authority to decide whether a defendant can be admitted to the mental health court. Furthermore, the governing documents do not allow a trial court to sentence a defendant to mental health court without the prosecutor's consent. Because the prosecution did not consent in this case, the prosecution argues, the trial

court abused its discretion by sentencing defendant to participate in the Lapeer County Mental Health Court. We disagree.

We review "questions of law . . . de novo and the trial court's decision about the sentence imposed for an abuse of discretion." *People v Wiley*, 324 Mich App 130, 165; 919 NW2d 802 (2018), quoting *People v Malinowski*, 301 Mich App 182, 185; 835 NW2d 468 (2013) (quotation marks omitted). "An abuse of discretion occurs when a trial court's decision falls outside the range of reasonable and principled outcomes. A trial court necessarily abuses its discretion when it makes an error of law." *People v Franklin*, 500 Mich 92, 100; 894 NW2d 561 (2017) (citations and quotation marks omitted). "The interpretation of a statute or court rule . . . involves a question of law that [this Court reviews] de novo." *People v Parker*, 319 Mich App 664, 669; 903 NW2d 405 (2017). Additionally, if the plain and ordinary meaning of a statute or court rule is clear, judicial construction is not necessary. *People v Morey*, 461 Mich 325, 330; 603 NW2d 250 (1999); *People v Howell*, 300 Mich App 638, 645; 834 NW2d 923 (2013).

MCL 600.1090 *et seq*. outlines the legal requirements governing mental health courts in the state of Michigan. MCL 600.1091(1), in relevant part, provides the statutory requirements for the establishment of a mental health court:

> The circuit court or the district court in any judicial circuit or a district court in any judicial district may adopt or institute a mental health court pursuant to statute or court rules. However, if the mental health court will include in its program individuals who may be eligible for discharge and dismissal of an offense, delayed sentence, or deviation from the sentencing guidelines, the circuit or district court shall not adopt or institute the mental health court unless the circuit or district court enters into a memorandum of understanding with each participating prosecuting attorney in the circuit or district court district, a representative or representatives of the community mental health services programs, a representative of the criminal defense bar, and a representative or representatives of community treatment providers. . . . The memorandum of understanding must describe the role of each party.

MCL 600.1093 outlines the procedure for admission into mental health court:

> (1) Each mental health court shall determine whether an individual may be admitted to the mental health court. No individual has a right to be admitted into a mental health court. Admission into a mental health court program is at the discretion of the court based on the individual's legal or clinical eligibility. An individual may be admitted to mental health court regardless of prior participation or prior completion status. However, in no case shall a violent offender be admitted into mental health court.
>
> * * *
>
> (3) To be admitted to a mental health court, an individual shall cooperate with and complete a preadmission screening and evaluation assessment and shall submit to any future evaluation assessment as directed by the mental health court. A

-3-

preadmission screening and evaluation assessment must include all of the following:

> (a) A review of the individual's criminal history. A review of the law enforcement information network may be considered sufficient for purposes of this subdivision unless a further review is warranted. The court may accept other verifiable and reliable information from the prosecution or defense to complete its review and may require the individual to submit a statement as to whether or not he or she has previously been admitted to a mental health court and the results of his or her participation in the prior program or programs.

> (b) An assessment of the risk of danger or harm to the individual, others, or the community.

> (c) A mental health assessment, clinical in nature, and using standardized instruments that have acceptable reliability and validity, meeting diagnostic criteria for a serious mental illness, serious emotional disturbance, co-occurring disorder, or developmental disability.

> (d) A review of any special needs or circumstances of the individual that may potentially affect the individual's ability to receive mental health or substance abuse treatment and follow the court's orders.

In this case, a Memorandum of Understanding and a Policy and Procedure Manual also govern the Lapeer County Mental Health Court. The manual's provisions state that "[i]n all cases and regardless of the charge, the [p]rosecuting [a]ttorney must agree to the defendant's admission to the" Lapeer County Mental Health Court. The prosecution interprets this provision as granting it unilateral authority to bar defendant's admission to mental health court, and that any such determination is binding on the trial court.

However, when reading this requirement in the manual's broader context, it becomes apparent that the consent requirement does not carry the level of authority asserted by the prosecution. The manual itself provides guidance on how its provisions are to be understood, stating that its policies and procedures "shall not be construed as rigid rules and policies but as guidelines on 'best practices' for the efficient and effective function of the [Mental Health Court] . . . ." The manual further states, "[u]nless mandated by State or Federal law or funding requirements, the policies and procedures must be flexible in nature." Thus, the manual itself understands its provisions as more akin to guidance than regulations. Given the acknowledgment of the flexibility of its provisions, the manual foresees and allows for a certain level of discretion on the part of those effecting its provisions. As a result, we understand the manual's consent provision to be a standard "best practice" concerning admission to the Lapeer County Mental Health Court, not a "rigid" rule from which a trial court cannot stray.

Understanding the manual's consent provision in this light, we conclude that it was within the trial court's discretion to sentence defendant to participation in mental health court, despite the prosecution's objection and lack of consent. Nothing on the record indicates that the

trial court failed to follow the statutory requirements concerning defendant's admission to mental health court. Although the trial court did deviate from the manual's guidance by admitting defendant without the prosecution's consent, the record shows the trial court did so based on the recommendation contained within defendant's PSIR. In doing so, the trial court adhered to the manual's stated goal that admission to the Lapeer County Mental Health Court "will not be based on plea agreements or delayed sentence[s] but on the appropriateness of the defendant[.]"

The prosecution also argues that this Court should extend its holding in *People v Baldes*, 309 Mich App 651, 657; 873 NW2d 338 (2015) to mental health courts. In *Baldes*, this Court held that "courts may not admit a defendant into a drug treatment program when doing so departs from the sentencing guidelines and the prosecution does not approve." *Id*. The prosecution asserts that, given the similarity between drug courts and mental health courts, it makes sense to apply *Baldes*'s holding to this case. We disagree.

In urging this Court to apply this Court's holding *Baldes* regarding drug courts to mental health courts, the prosecution overlooks one crucial distinction. Under MCL 600.1068(2), which governs the admission of persons to drug court, the prosecution must consent to a defendant's placement to a drug court in accordance with the procedures set out in the memorandum of understanding that created the court. There is no such requirement found in MCL 600.1093 for the admission of defendants to a mental health court. In *Baldes*, this Court was concerned with whether the prosecutor's participation in the defendant's screening process for drug court constituted consent to the defendant's admission to drug court, as required under the statute. It does not, as the prosecution contends, support an extension of the consent requirement of MCL 600.1068(2) to other treatment courts. We decline to do so here.

Because of the discretion and flexibility accorded to the trial court by the manual, we conclude that the trial court's decision to sentence defendant to participation in mental health court without the consent of the prosecution fell within the range of reasonable and principled outcomes available to the trial court. We find no abuse of discretion.

## III. WITHDRAWAL OF DEFENDANT'S PLEA

The prosecution next argues that the trial court erred in denying its motion to withdraw from its plea agreement with defendant. Again, we disagree.

We review "a trial court's decision on a motion to withdraw a plea for an abuse of discretion. . . . Underlying questions of law are reviewed de novo, while a trial court's factual findings are reviewed for clear error." *People v Martinez*, 307 Mich App 641, 646-647; 861 NW2d 905 (2014).

Under MCR 6.310(E), "[o]n the prosecutor's motion, the court may vacate a plea if the defendant has failed to comply with the terms of a plea agreement." The prosecution argues that the trial court should have allowed it to withdraw from the plea agreement, in effect vacating defendant's plea, because it believes defendant's consent to participate in mental health court violated the plea agreement's terms. Interpreting MCR 6.310(E), this Court has stated that the rule's plain language "clearly limits the discretion of the trial court to vacate an accepted plea. The trial court may exercise its discretion to vacate an accepted plea only under the parameters

of the court rule." *Martinez*, 307 Mich App at 649, quoting *People v Strong*, 213 Mich App 107, 111-112; 539 NW2d 736 (1995). Thus, the question of whether the trial court abused its discretion in denying the prosecution's motion first requires a determination of whether defendant's conduct violated the terms of the plea agreement.

Plea agreements are an "essential component of the efficient administration of justice." *Martinez*, 307 Mich App at 651, quoting *People v Jackson*, 192 Mich App 10, 14-15; 480 NW2d 283 (1991) (quotation marks omitted). While plea agreements are similar to contracts, because they are concerned with the criminal law they are governed by the "interests of justice" rather than by commercial principles. *Martinez* 307 Mich App at 651 (citation omitted). "Thus, the scope of a plea bargain is determined by its terms under the principles of contract interpretation but those terms must serve the interests of justice." *Id*.

When interpreting contractual terms, a court's primary purpose is to "determine the parties' intent from the language of the contract. In general, contract language is interpreted according to its plain meaning. An unambiguous contract must be enforced according to its terms." *Martinez*, 307 Mich App at 651-652 (quotation marks and citations omitted). Moreover, in cases involving plea bargains with ambiguous terms, this Court has also applied "general contract principles for construing ambiguous agreements . . . ." *People v Swirles (On Remand)*, 218 Mich App 133, 138; 553 NW2d 357 (1996). A recent opinion by our Supreme Court provides a helpful summary of these principles. When the contract's terms are ambiguous, a court may look to extrinsic evidence to determine the parties' intent. *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019), quoting *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008). A contractual term can be ambiguous either when it is "susceptible to more than a single meaning" or "if two provisions of the same contract irreconcilably conflict with each other. . . ." *Kendzierski*, 503 Mich at 311 (quotation marks and citations omitted). Our Supreme Court has also recognized two ways in which a contractual ambiguity can be discovered. A patent ambiguity arises "from the face of the document." *Id*. at 317 (quotation marks and citation omitted). By contrast, a latent ambiguity "does not readily appear in the language of a document, but instead arises from a collateral matter when the document's terms are applied or executed." *Id*., quoting *Shay v Aldrich*, 487 Mich 648, 668; 790 NW2d 629 (2010) (quotation marks omitted).

Applying these principles, the terms, and thus the scope, of the plea agreement in this case are clear up until a point. Both in the written agreement and as expressed by the trial court on the record, the plea agreement clearly and unambiguously states that defendant would plead no-contest to the felon-in-possession, felonious assault, and resisting a police officer charges with a habitual second-offender enhancement. In exchange, the prosecution agreed to dismiss the two felony-firearm charges. These terms are not in dispute and defendant complied with those terms. However, an issue arises in trying to interpret the term "no mental health [court.]" While acknowledging that a finding of ambiguity is a "last resort" in contract interpretation, *Kendzierski*, 503 Mich at 311, the language and context of this provision of the plea agreement do not provide us with enough guidance to construe and give effect to the parties' intention from the plain language alone. As is apparent from our review of the record, while the phrase on its own appears to be straightforward, a latent ambiguity arises when trying to give effect to the provision in the broader context of effecting the plea agreement.

-6-

When a contractual term is prone to multiple meanings, a court may look to extrinsic evidence to help adduce and affect the parties' intent. *Id*. In this case, the most helpful evidence comes from the plea colloquy at defendant's preliminary examination. During the colloquy, the trial court noted that the written plea agreement stated "no mental health court," and interpreted the phrase to mean that the prosecution was not "up-front" consenting to defendant's admission to mental health court as part of the plea agreement. However, the trial court immediately qualified this interpretation by stating that the question of whether defendant would be admitted to mental health court depended on recommendation contained within the PSIR. The prosecution did not correct the trial court's interpretation, nor did it state the plea agreement prohibited defendant being sentenced to participation in mental health court, or even agreeing with or consenting to the trial court's decision to impose such a sentence. Instead, the prosecution stated the trial court had accurately stated the plea agreement's terms on the record. In light of the interpretation stated by the trial court and accepted by the parties, we agree with the trial court's ultimate determination that the plea agreement did not definitively state whether defendant "would or would not be considered" for admission to mental health court. Thus, when defendant requested the trial court follow the PSIR's recommendation that he be sentenced to mental health court, he did not violate the terms of the plea agreement.

Further, the trial court concluded that, in light of the terms of the agreement as stated upon the record, the agreement contained a sentence recommendation rather than a sentence agreement which the trial court was bound to follow. Under *People v Killebrew*, 416 Mich 189, 209-210; 330 NW2d 834 (1982), a trial court is not required to impose a sentence that is only recommended as part of a plea agreement, and not a condition upon which the agreement is predicated. The trial court reviewed the terms of the plea agreement, as they had been placed on the record, and concluded that "there was no specific agreement that [defendant] would or would not be considered for placement, and the matter was left to this Court's [sic] discretion . . . . The parties agreed with the formulation of the plea agreement on the record." Nothing in our review of the record leads us to believe that the trial court's conclusion was in error. As a result, it was within the trial court's discretion to deny the prosecution's motion to withdraw from the plea agreement under MCR 6.310(E).

The prosecution also argues that it should have been permitted to withdraw from the plea agreement as allowed by our Supreme Court in *People v Siebert*, 450 Mich 500, 504; 537 NW2d 891 (1995). In *Siebert*, our Supreme Court held that if a trial court accepts a plea bargain that contains an agreed-upon sentence and chooses to impose a lesser sentence, then "a prosecutor . . . is entitled to learn that the judge does not intend to impose the agreed-upon sentence, to be advised what the sentence would be, and given an opportunity to withdraw from the plea agreement." *Id*. at 510. As the prosecution rightly points out, *Siebert*'s holding was recently extended by our Supreme Court: "When it rejects either a sentence or a plea term . . . while keeping the rest of the agreement, the trial court essentially imposes a different plea bargain on the prosecutor than he or she agreed to." *People v Smith*, 502 Mich 624, 647; 918 NW2d 718 (2018)(opinion by VIVIANO, J.). A trial court's failure to provide the prosecution with an opportunity to withdraw from the plea agreement in such a situation amounts to an abuse of discretion. *Id*.

However, a significant distinction exists between *Smith* and the case at hand, which leads us to conclude that the holding in *Smith* is not dispositive here. In *Smith*, the plea terms that the

trial court disregarded were clear and imposed definite obligations on the defendant. By invalidating them at sentencing, the trial court undoubtedly imposed a new plea agreement on the prosecutor. That is not the case here, where the term of defendant's plea agreement concerning mental health court is ambiguous at best. Because it is unclear what obligation the provision imposed, we cannot conclude that the trial court's ultimate interpretation changed these obligations or imposed a new plea agreement on the prosecution. Further, considering the prosecution's assent to the trial court's interpretation of the plea agreement's terms, there is nothing on the record to suggest that the trial court invalidated one provision of the plea agreement while imposing the remainder. In either situation, the trial court was not required under *Smith* to give the prosecution notice and an opportunity to withdraw from the plea agreement. As a result, the trial court did not abuse its discretion in denying the prosecution's motion to withdraw from the plea agreement.

Affirmed.

/s/ Kathleen Jansen
/s/ David H. Sawyer