FLAVIA M. T. PENDILL ET AL. v. JOHN B. MAAS AND THE EAST JACKSON MINING COMPANY.

*Fixtures—Lease—Security for rent.*

The question involved in this case is whether certain machinery purchased of the lessors by the lessees in a mining lease, and then on the land, became a part of the realty under the terms of the lease, which provided that the lessees might erect buildings and put in engines and machinery, which should become a part of the realty, but might be removed within 60 days after the termination of the lease if its conditions had been performed by the lessees, but not otherwise; which question is answered in the affirmative.

Appeal from Marquette. (Stone, J.) Argued April 12, 1893. Decided October 27, 1893.

Bill to restrain defendants from removing or interfering with certain property. Complainants appeal. Decree reversed, and one entered here as prayed. The facts are stated in the opinion.

*Clark & Pearl,* for complainants.

*Ball & Hanscom,* for defendant Maas, contended:

1. The machinery in controversy, whatever it may have been before, was by the sale to Adams & Foley treated by the complainants as personal property, and was, to all intents and purposes, severed from the realty, if before that it was a part of it. It was to be paid for, and was paid for, simultaneously with the delivery of the lease. As between the parties, then, it was chattel property, sold by the complainants to, and paid for by, Adams & Foley.

2. The money to pay for the machinery was raised by chattel mortgage upon it. The mortgage was already executed and money paid, and therefore the mortgage attached to the machinery simultaneously with its transfer to Adams & Foley, and could not, by any act of Adams & Foley, or by virtue of any agreement between them and complainants, become a fixture; citing *Godard v. Gould,* 14 Barb. 662; *Crippen v. Morrison,* 13 Mich. 23; *Scudder v. Anderson,* 54 Id. 122; *Manwaring v. Jenison,* 61 Id. 117, 139; *Burrill v. Lumber Co.,* 65 Id. 575.

3. The rule contended for by complainants' counsel, and established in this State, that the intent of the parties making the annexation is to govern in determining whether the annexed chattels are fixtures or not, only applies when the parties are the *owners* of the chattels annexed; citing *Adams v. Lee,* 31 Mich. 442; *Iron Works v. Walker,* 91 Id. 409; *Bartlett v. Haviland,* 92 Id. 552; *Ford v. Cobb,* 20 N. Y. 344; *Tifft v. Horton,* 53 Id. 377; *Sisson v. Hibbard,* 75 Id. 542; *Harkey v. Cain,* 69 Tex. 146; *Campbell v. Roddy,* 44 N. J. Eq. 244.

4. Even if the machinery became "part of the realty," it was only as fixtures, and was removable during the term; citing Ewell, Fixt. 139; *Conrad v. Mining Co.,* 54 Mich. 249.

LONG, J. Defendants prevailed in the court below. Complainants appeal.

The court below filed a written opinion, in which the following facts are found and conclusions of law reached:

"The bill in this cause was filed to restrain the defendants from

removing or interfering with a certain engine and hoisting machine or drum upon the land described in a certain lease, which is made a part of the bill, and upon which engine and machine the defendant Maas has a chattel mortgage, and which property he was about to remove when the bill was filed. The lease in question was given by complainants to Adams & Foley, and by the latter assigned to the defendant the East Jackson Mining Co. This lease was made in pursuance of a certain option, which was put in evidence at the hearing. By the terms of the option, Adams & Foley were to purchase such machinery as complainants might have on the land, belonging to their mine, at its value, to be ascertained by appraisers mutually chosen, and were to pay cash for it when the lease was signed. The machinery then referred to was the engine and hoisting machinery or drum in question here.

"By the terms of the lease it was agreed that Adams & Foley should purchase the engine and hoisting drum then upon the property, the value of the same to be ascertained in the manner therein specified; the same to be paid for at the appraised price upon the execution and delivery of the lease. It was further provided that, in case it should be determined that the Union Mining Co. was the owner of said machinery so sold by complainants to Adams & Foley, then, upon that company or its successors or assigns removing said machinery, or obtaining judgment for its value against said Adams & Foley, complainants were to pay Adams & Foley the sum they should pay complainants for the same, without interest, and no other damages, or pay the judgment so obtained against Adams & Foley. By another clause of the lease it was provided that Adams & Foley might erect buildings, put in engines and machinery, build roads, make excavations, and do such other things on said lands proper or expedient for carrying on explorations and mining, but all such engines, machinery, buildings, and other improvements should form a part of the realty when put up or erected: Provided that, on the termination of the lease, Adams & Foley, by paying all rents, royalties, taxes, and assessments that might be due or owing according to the terms thereof, might, within 60 days after such termination, remove such buildings, engines, etc., owned by them, but not otherwise. The rent was to become due December 1 of each year for the year past. In case default was made in payment of rent, it was provided that the lease might, on 30 days' notice, be by complainants declared forfeited.

"The annual rent of $3,000 not having been paid December 1, 1891, the contemplated notice was given by complainants to the assignee of the lease, the East Jackson Mining Co.

"I find from the evidence that the engine and drum in ques-

tion were appraised at the sum of $1,300, and were paid for on or about October 14, 1886, and the execution of the lease was perfected on that day by the acknowledgment of Adams & Foley. It was known to the complainants that the defendant Maas advanced the money to pay for this machinery to complainants. On the same day Adams & Foley gave to Maas a chattel mortgage upon this machinery, and other property, to secure the payment of the sum of $3,000 then owing to him by them, including the $1,300 advanced to pay for this machinery. At that date there was nothing due upon the lease.

"Default having been made in the payment of the amount due on this chattel mortgage (which had been filed and renewed), and defendant Maas being about to remove the engine and drum, this bill was filed to restrain him from so doing.

"The position of the complainants is that they have a lien upon the engine and drum, by virtue of the terms of the lease, for their rent due and unpaid. The defendants contend that, first, the engine and drum were personal property, and had been made such by the terms of the sale to Adams & Foley; that it was not contemplated by the terms of the contract that this property was to be a part of the realty, nor be a part of the property covered by the clause as to future erections, buildings, and machinery to be placed upon the land by Adams & Foley; and, second, that, if included as a part of the property to become realty under the terms of the lease, it would be only a fixture, and that it might be removed or mortgaged by the owners, Adams & Foley, at any time when they were not in default, and that there was no default when the mortgage to Maas was made.

'1. There is, it seems to me, much force in the first position. The construction or interpretation of written contracts consists in ascertaining the meaning of the parties as expressed in the terms of the writing, according to the rules of grammar and subject to the rules of law. This property is certainly not within the terms of the contract or language used. The contract did not provide that this property was to become a part of the realty. That was to be the condition of such property as might in the future be erected, placed, or put upon the land. This property was already upon the land. It would have been an easy thing for the parties to have provided that the property then upon the land should become realty or security, but they did not so contract, and such was not the language employed. The property in question had, by the terms of the lease, been treated as personal property. It had that day been severed, and sold by the complainants to Adams & Foley, and had been fully paid for. Some question as to the claim of another party to it had been raised, and that had been disposed of by the lease. I do not think that it was by the parties intended

that this property was to become a part of the security named in the lease.

"2. If it were so intended, it at most was to become a fixture merely, to secure the payment of rent. It is spoken of as remaining the property of Adams & Foley, they having the right to remove it within 60 days after the termination of the lease upon payment of rents, etc. If it was a fixture, then the tenants had a right to remove it at any time during the term, in the absence of any agreement to the contrary. *Crippen v. Morrison*, 13 Mich. 32. If the instrument is to be treated as a lease with security, then the tenants had a right to remove or sever this property when not in default, and there was no default when the chattel mortgage was made. *Dalton v. Laudahn*, 27 Mich. 529. There was no agreement that the property placed or erected on the land should remain there during the term of the lease.

"In either view of the case, I am of opinion that the complainants are not entitled to the relief asked for, as against defendant Maas. Their bill must be dismissed, with costs, as to him. Under the claim in the cross-bill, and under the evidence, the amount due to the defendant Maas should be determined. I find it to be $3,266.66. The other property covered by the mortgage should be sold as provided in the mortgage, and the deficiency, if any, ascertained. The case should be referred to a commissioner to take proofs, and ascertain and report the value of the property in question, which complainants have converted. Its value should by complainants be paid to defendant Maas, or so much of the amount as necessary to make up the deficiency so found upon the sale of the other property."

We think the court below was in error in the interpretation of the contract. It is provided by it "that the parties of the second part may erect buildings, put in engines and machinery," etc., "but all such engines, machinery, buildings, and other improvements shall form part of the realty when put up or erected."

Following this clause we find it provided "that on the termination of this lease the parties of the second part, by paying all rents, royalties, taxes, and assessments that may be due or owing according to the terms hereof, may, within 60 days after such termination, remove such buildings, engines, tramways, machinery, and rails, on any track owned by said parties of the second part, but not other-

wise." It is too narrow a construction of the contract to say that it was not intended by the parties to include the property in controversy here, and make that, as well as the other fixtures, a part of the realty. As was said in *Harlow v. Iron Co.*, 36 Mich. 105, 117:

"In construing a written lease, it is contrary to well-settled rules of construction to give it a narrow and technical interpretation, based upon some particular word or clause. The intent must be gathered from an examination of the instrument as a whole, and such a construction must be put upon it, if possible, as will render all its clauses consistent and harmonious."

Here the parties agreed that whatever improvements were put on the premises should form part of the realty when put up or erected, and might be removed, if the rent was paid, within 60 days after the termination of the lease, or time of surrender under the notice, and not otherwise. It is clear that the parties agreed that certain improvements made should form a part of the realty, and there was no exception made of this machinery, which defendant Maas now claims under his chattel mortgage. It is true that Adams & Foley had the right, under certain conditions, to sever these fixtures, and remove them from the land, but those conditions were not complied with. At the time that Maas took the chattel mortgage the lease had been executed, and this machinery, by the agreement contained in the lease, had become realty. The complainants had no part in the making of the mortgage, and it is not clear that they were cognizant of it. Something was said to one of the complainants that Adams & Foley were getting the money from Maas to pay for this machinery, but nothing said, if the testimony of the complainants be true, that Maas was taking any security for it on the machinery. We think the evidence of the complainants establishes the fact that they had no knowledge of the mortgage until after their rights had become fixed under the lease.

The decree of the court below must be reversed, and a decree entered in this Court in accordance with the prayer of complainants' bill. Complainants will recover costs of both courts.

HOOKER, C. J., and MONTGOMERY, J., concurred with LONG, J.

McGRATH, J. I agree with the circuit judge that the contract did not provide that the engine and hoisting drum were to become a part of the realty. They were already upon the premises, were dealt with separately, sold to the lessees, and paid for. The contract nowhere contemplated that they should be or become a part of the realty.

GRANT, J., did not sit.