# Court of Appeals, State of Michigan

## ORDER

Cassidy Rae Studio LLC v Michael Bock

Docket No. 345984

LC No. 17-005093-CB

Patrick M. Meter
Presiding Judge

Colleen A. O'Brien

Jonathan Tukel
Judges

The Court orders that the motion for reconsideration is GRANTED to the extent that Section E and footnote 4 of the opinion are rescinded. Through no fault of plaintiff's counsel, the panel did not utilize the complete brief submitted by plaintiff. However, after review of the complete brief, the Court's disposition is not altered. Thus, in all other respects, the motion for reconsideration is DENIED. To effectuate this ruling, this Court's opinion issued December 26, 2019 is hereby VACATED. A new opinion is attached to this order.

/s/ Patrick M. Meter

A true copy entered and certified by Jerome W. Zimmer Jr., Chief Clerk, on

February 11, 2020
Date

Chief Clerk

*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CASSIDY RAE STUDIO, LLC, and CASSIDY
RAE DO,

UNPUBLISHED
February 11, 2020

Plaintiffs-Appellees,

v

No. 345984
Ottawa Circuit Court
LC No. 17-005093-CB

MICHAEL BOCKS and SOF HOLLAND TOWN
CENTER, LLC,

Defendants-Appellants.

ON RECONSIDERATION

Before: METER, P.J., and O'BRIEN and TUKEL, JJ.

PER CURIAM.

Defendants, Michael Bocks and SOF Holland Town Center, LLC, appeal as of right the bench trial judgment in favor of plaintiffs, Cassidy Rae Studio, LLC, and Cassidy Rae Do, that defendants breached a lease with plaintiffs and converted a color bar and reception desk that belonged to plaintiffs.[1] On appeal, defendants argue that the trial court erred by finding that the color bar and reception desk belonged to plaintiffs. Thus, defendants argue that they did not breach the lease agreement they had with plaintiffs, they were not liable for conversion of the color bar and reception desk, and the trial court erred by awarding damages and attorney fees to plaintiffs. Additionally, defendants argue that plaintiffs converted the color bar and reception desk. Because the lease specified that alterations and additions to the premises belonged to the realty—and by

---

[1] The color bar was a large fixture with a sink used for mixing hair color and washing color bowls and dishes. It contained a counter and storage space. The sink belonged to Rae Do and was installed into the color bar. All references to the color bar and its disputed ownership throughout this opinion refer to the color bar only and do not refer to Rae Do's sink that was installed in the color bar.

extension to defendants—at the end of the lease, we reverse the trial court's judgment and remand this case to the trial court for further proceedings.

## I. UNDERLYING FACTS

This case arises out of a dispute regarding the ownership of a reception desk and color bar at the end of a commercial lease for a beauty salon in Holland, Michigan. Rae Do was the sole owner of Cassidy Rae Studio, a full-service salon. SOF was the owner of the property leased by Rae Do. Bocks was the contractor for SOF. He negotiated the lease in question on behalf of SOF and built and installed the color bar and reception desk in dispute.

Rae Do wanted to expand her salon in 2012, but she did not have the funds to construct a large space with the necessary equipment. She ultimately signed the lease at issue in this case with SOF on July 3, 2012. The lease contained the following provision:

> **SECTION 4. IMPROVEMENTS TO THE PREMISES**. Prior to August 1, 2012, Landlord, *at Landlord's sole cost and expense, shall perform the work in the new Premises* detailed in Exhibit B ("Landlord's Work"), attached hereto. In no event shall the cost to Landlord of the improvements to premises exceed Sixty Thousand Dollars ($60,000). Other than Landlord's Work, Tenant shall accept the Premises in its "as-is" condition. It is understood and agreed that Landlord shall have no obligation for making any further improvements to the Premises. It is understood and agreed that Tenant shall not make, or permit to be made, any alterations to the Premises without Landlord's prior written approval of its plans and specifications. Tenant's plans and specifications shall be in compliance with Landlord's design criteria for the Center and in compliance with applicable building codes. *Any additions to, or alterations of, the Premises, except trade fixtures, shall upon expiration or termination of the Lease Term become a part of the realty and belongs to the Landlord.* Tenant shall pay promptly all persons furnishing labor or materials with respect to any work performed by Tenant or its contractors on or about the Premises. In the event any mechanic's or other lien shall at any time be filed against the Premises by reason of work, labor, services or materials performed or furnished to Tenant, Tenant shall forthwith cause the same to be discharged of record or bonded to the satisfaction of Landlord. [Emphasis added.]

Additionally, Rae Do signed a personal guaranty agreement for the amount of $60,000, guaranteeing rental payments up to that amount. Rae Do operated her salon in the rented space for seven years. In July 2017, she decided to close the salon.[2] Three contractors who worked in Cassidy Rae Studio formed Black Tulip Salon, LLC, and negotiated the purchase of Rae Do's assets. Rae Do created a list of assets with a total value of $29,876. She depreciated the value of the assets and offered to sell them to Black Tulip Salon for $20,000. One of the members of Black Tulip Salon contacted Bocks regarding the ownership and value of some of the items. He informed

---

[2] The lease terminated in September 2017.

-2-

her that SOF owned some of the items, including the color bar and reception desk. The members of Black Tulip Salon continued to negotiate with Rae Do, but the deal eventually fell through and Black Tulip did not purchase Rae Do's assets. Rae Do and her husband paid to have assets—including the color bar and the reception desk—removed from the premises before the end of the lease. Black Tulip Salon signed a lease for the premises on October 5, 2017. Defendants provided Black Tulip Salon with a new color bar and reception desk. SOF sold the building in December 2017.

Plaintiffs filed a complaint in the instant case in September 2017, alleging breach of contract, unjust enrichment, tortious interference with a business relationship, and conversion. Essentially, Rae Do argued that by stating that SOF owned the color bar and reception desk, Bocks interfered with the negotiations between Rae Do and Black Tulip Salon. Rae Do, however, alleged that she owned the color bar and reception desk because she paid for them through additional rent payments. Defendants filed a counterclaim against plaintiffs for conversion of the color bar and reception desk. At the conclusion of a two-day bench trial, the trial court determined that the color bar and reception desk were trade fixtures owned by plaintiffs; therefore, defendants were liable for breach of contract and conversion for asserting ownership of those items and attempting to negotiate a new lease with Black Tulip Salon with those items. The trial court awarded plaintiffs $20,000 in statutory conversion damages and $3,700 in damages for plaintiffs' breach of contract claim. Plaintiffs and defendants entered into a stipulation agreeing that defendants were liable for $15,837.50 in attorney fees. The trial court also ordered a stay of execution of the attorney fees award pending defendants' appeal in this Court.

## II. STANDARD OF REVIEW

"When reviewing a trial court's decision after a bench trial, we review its findings of fact for clear error and review de novo its conclusions of law." *Butler v Wayne Co*, 289 Mich App 664, 671; 798 NW2d 37 (2010). In addition, this Court also reviews "de novo a trial court's interpretation of a written contract." *Id*. "The initial question whether contract language is ambiguous is a question of law. If the contract language is clear and unambiguous, its meaning is a question of law." *Id*. However, "[w]here the contract language is unclear or susceptible to multiple meanings, interpretation becomes a question of fact." *Id*. Finally, "[a] finding is clearly erroneous where, after reviewing the entire record, this Court is left with a definite and firm conviction that a mistake has been made." *Alan Custom Home, Inc v Krol*, 256 Mich App 505, 512; 667 NW2d 379 (2003).

## III. ANALYSIS

### A. OWNERSHIP OF THE COLOR BAR AND RECEPTION DESK

Defendants argue that the trial court erred in determining that the color bar and reception desk were plaintiffs' trade fixtures. We agree and find that defendants owned the color bar and reception desk because they were fixtures attached to the premises.

"In ascertaining the meaning of a contract, we give the words used in the contract their plain and ordinary meaning that would be apparent to a reader of the instrument." *Rory v Continental Ins Co*, 473 Mich 457, 464; 703 NW2d 23 (2005). "A dictionary may be consulted to

ascertain the plain and ordinary meaning of words or phrases used in the contract." *Auto Owners Ins Co v Seils*, 310 Mich App 132, 145; 871 NW2d 530 (2015). "[C]ontracts must be read as a whole," *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 447; 886 NW2d 445 (2015), giving "effect to every word, phrase, and clause," while taking pains to "avoid an interpretation that would render any part of the contract surplusage or nugatory," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). Accordingly, "[t]he construction or interpretation of written contracts consists in ascertaining the meaning of the parties, as expressed in the terms of the writing, according to the rules of grammar." *Pendill v Maas*, 97 Mich 215, 218; 56 NW 597 (1893).

"A fundamental tenet of our jurisprudence is that unambiguous contracts are not open to judicial construction and must be enforced as written." *Rory*, 473 Mich at 468. Contracts are enforced "according to their unambiguous terms because doing so respects the freedom of individuals freely to arrange their affairs via contract." *Id*. "However, if the contractual language is ambiguous, extrinsic evidence can be presented to determine the intent of the parties." *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008).

A "contract is ambiguous when its provisions are capable of conflicting interpretations. Accordingly, if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Klapp*, 468 Mich at 467 (citation and quotation marks omitted). Furthermore, "courts cannot simply ignore portions of a contract in order to avoid a finding of ambiguity or in order to declare an ambiguity. Instead, contracts must be construed so as to give effect to every word or phrase as far as practicable." *Id*. (citation and quotation marks omitted). "[A]mbiguity is a finding of last resort" that "is to be reached only after all other conventional means of interpretation have been applied and found wanting." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (citations and quotation marks omitted). Accordingly, this Court "will not create ambiguity where the terms of the contract are clear." *Id*. (citation and quotation marks omitted).

"[W]hen a court abrogates unambiguous contractual provisions based on its own independent assessment of 'reasonableness,' the court undermines the parties' freedom of contract." *Id*. at 468-469. Permitting a court to make its own determination of reasonableness and to rewrite a contract accordingly, even when it is unambiguous "is contrary to the bedrock principle of American contract law that parties are free to contract as they see fit, and the courts are to enforce the agreement as written absent some highly unusual circumstance, such as a contract in violation of law or public policy." *Kendzierski*, 503 Mich at 312 (citation and quotation marks omitted). Finally, "if a contract is ambiguous, then extrinsic evidence is admissible to determine the actual intent of the parties." *Shay v Aldrich*, 487 Mich 648, 667; 790 NW2d 629 (2010) (citation and quotation marks omitted).

"[T]he term 'fixture' necessarily implies something having a possible existence apart from realty, but which may, by annexation, be assimilated into realty." *Wayne Co v William G Britton & Virginia M Britton Trust*, 454 Mich 608, 614-615; 563 NW2d 674 (1997). Property is a fixture if the following criteria exist: "[First], annexation to the realty, either actual or constructive; second, adaptation or application to the use or purpose to which that part of the realty to which it is connected is appropriated; and third, intention to make the article a permanent accession to the freehold." *Id*. at 615 (alteration in original; citation omitted). On the other hand, "a trade fixture

is a fixture installed on a leasehold by a tenant that the tenant may remove at the termination of the lease." *Id*. at 612 n 2.

After considering the plain language of the lease and its attached documents, we conclude that the reception desk and color bar were fixtures that belonged with the realty after the termination of the parties' lease. The first sentence in § 4 of the lease states that the landlord, SOF, shall perform the work detailed in an exhibit to the lease identified as "Landlord's Work" at SOF's sole cost and expense. Exhibit B of the lease is titled "Landlord's Work" and consists of a diagram showing the floor plan and renovations that were to be completed on the premises for the salon; the reception desk and color bar are included in the diagram. And § 4 of the lease further states that any additions or alterations to the premises, with the exception of trade fixtures, shall become part of the realty and belong to SOF at the termination of the lease. Thus, the lease contemplates that the reception desk and color bar are not trade fixtures, because they are part of the work the landlord, SOF, was obligated to undertake, and which was to remain the landlord's upon termination of the lease.

In addition, the lease states that the tenant was Cassidy Rae Studio. Section 27 of the lease concerns the guaranty:

> **SECTION 27. GUARANTY.** The obligations of Tenant under this Lease shall be guaranteed by Cassidy Rae Do as more particularly set forth in the Guaranty attached hereto as Exhibit D.

The guaranty agreement provided that

> Landlord has leased certain property located in a shopping center known as Holland Town Center, Suite B060 (the "Premises") to Cassidy Rae Do, (the "Tenant"), by a certain Lease Agreement dated ____ (the "Lease"). As a condition of the Lease, the Landlord has required Guarantor to unconditionally guaranty Tenant's performance under the Lease, subject to the terms and conditions hereinafter set forth. Guarantor is interested in Tenant and has agreed to so guaranty Tenant's performance under the Lease.

> \* \* \*

> 1. Guarantor dos hereby guaranty to Landlord, its successors and assigns, (i) the full and prompt payment of the Fixed Minimum Rent, Percentage Rent and additional rents as set forth in the Lease (collectively, "Rent") and (ii) the full, timely and complete performance of all terms, covenants and conditions contained in the Lease on the part of Tenant to be paid or be performed thereunder. Guarantor's obligations under this Guaranty shall be limited to a maximum of Sixty Thousand Dollars ($60,000), not including attorneys fees and any costs of collection.

The plain language of the lease establishes that items considered "Landlord's Work," such as the reception desk and color bar, were to be constructed at SOF's *sole* expense. As a result, these items were not paid for by plaintiffs. Moreover, the lease provides that the personal guarantee signed by Rae Do related to the "obligations of [Cassidy Rae Do Studio]." Cassidy Rae

Studio's obligation under the lease was to pay rent, not to pay for or install the color bar and reception desk. The guaranty agreement further states that Rae Do, in her personal capacity, was responsible for the full and prompt payment of the rent up to the amount of $60,000 in the event that Cassidy Rae Do Studio could not pay. The guaranty agreement did not contain any provision addressing the renovations to the premises that led to the installation of the color bar and reception desk. In other words, the only provision bearing on the ownership of the reception desk and color bar upon termination of the lease is § 4, and not the guarantee or any other provision.

Moreover, there is nothing in the lease or the attached documents obligating plaintiffs to pay for the improvements to the premises with a "loan" that would be paid by higher rental payments or modifying the terms of § 4 such that plaintiffs would become the owners of any of the improvements provided by defendants at the termination of the lease. The trial court found, as a question of fact, that the lease was ambiguous because it did not specify whether the reception desk and color bar, which were completed by the landlord, belonged to plaintiffs or defendants. The trial court also concluded that defendants orally represented to Rae Do that the $60,000 of improvement work was a result of a loan that she repaid through her rent payments, and thus that she would own the improvements at the end of the lease. In addition, the trial court concluded that any ambiguities in the lease had to be construed against defendants as the drafters of the lease. But the lease was not ambiguous. Accordingly, the trial court was not permitted to consider extrinsic evidence in interpreting the lease's terms. See *Rory*, 473 Mich at 468. While we are required to defer to the trial court's credibility determinations absent exceptional circumstances, *Patel v Patel*, 324 Mich App 631, 635; 922 NW2d 647 (2018), trial testimony about the lease was irrelevant here because the lease was unambiguous, and thus there was no occasion for the trial court to consider any extrinsic evidence, including witness credibility. See *Harbor Park Market, Inc v Gronda*, 277 Mich App 126, 133 n 3; 743 NW2d 585 (2007) (stating that "[i]n light of the clear and unambiguous language in the contract, we cannot consider what [the party's] understanding was regarding the scope of the condition").

The plain language of the lease shows that the improvements to the premises were completed at SOF's sole expense and belonged to the realty. The color bar and reception desk were annexed to the premises because they were attached to it. See *Wayne Co*, 454 Mich at 615 (holding that a fixture is "annexed" to a premises when it is "in some manner or means, albeit slight, attached or affixed, either actually or constructively, to the realty") (citation omitted). The color bar and reception desk were used as part of Cassidy Rae Salon's normal business and, therefore, were applied for the purpose to which they were attached to the realty. See *id*. Finally, the lease did not state that the color bar or reception desk would be removed at any time. Thus, the color bar and reception desk were fixtures. See *id*. But the color bar and reception desk were not trade fixtures because, by the lease's plain terms, plaintiffs did not pay for or install them. See *id*. at 612 n 2. Consequently, SOF owned the color bar and reception desk because they were fixtures to the premises; they were not trade fixtures plaintiffs could remove when the lease expired. See *Wayne Co v William G Britton & Virginia M Britton Trust*, 454 Mich at 612 n 2 (holding that "a trade fixture is a fixture installed on a leasehold by a tenant that the tenant may remove at the termination of the lease.").

## B. CONVERSION

Defendants assert that the trial court erred in finding that they were liable for conversion and assessing $20,000 in damages. We agree.

Common-law conversion consists of "any distinct act of dominion wrongfully exerted over another's personal property in denial of or inconsistent with his rights therein." *Aroma Wines & Equip, Inc v Columbian Dist Servs, Inc*, 497 Mich 337, 351-352; 871 NW2d 136 (2015) (citation and quotation marks omitted). A conversion may be committed by

> (a) intentionally dispossessing another of a chattel,
>
> (b) intentionally destroying or altering a chattel in the actor's possession,
>
> (c) using a chattel in the actor's possession without authority so to use it,
>
> (d) receiving a chattel pursuant to a sale, lease, pledge, gift or other transaction intending to acquire for himself or for another a proprietary interest in it,
>
> (e) disposing of a chattel by sale, lease, pledge, gift or other transaction intending to transfer a proprietary interest in it,
>
> (f) misdelivering a chattel, or
>
> (g) refusing to surrender a chattel on demand. [*Id*. at 351-352 (quotation marks and citation omitted); see also *Thoma v Tracy Motor Sales, Inc*, 360 Mich 434, 438; 104 NW2d 360 (1960).]

MCL 600.2919a provides:

> (1) A person damaged as a result of either or both of the following may recover 3 times the amount of actual damages sustained, plus costs and reasonable attorney fees:
>
> > (a) Another person's stealing or embezzling property or converting property to the other person's own use.
> >
> > (b) Another person's buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property when the person buying, receiving, possessing, concealing, or aiding in the concealment of stolen, embezzled, or converted property knew that the property was stolen, embezzled, or converted.

To obtain damages pursuant to MCL 600.2919a(1)(a), a plaintiff must provide additional evidence to show that the defendant converted the plaintiff's property to the defendant's own use. *Aroma Wines & Equip, Inc*, 497 Mich at 354-355. As discussed earlier, the trial court erred by concluding that the reception desk and color bar belonged to plaintiffs. These items belonged to defendants, and one cannot convert one's own property. Thus, any award of damages or attorney

fees was necessarily erroneous, as a conversion was a prerequisite to any such award, and by definition defendants could not have converted the color bar or reception desk.

## C. BREACH OF CONTRACT

Defendants argue that they did not breach the lease because they owned the color bar and reception desk. We agree.

"A party asserting a breach of contract must establish by a preponderance of the evidence that (1) there was a contract (2) which the other party breached (3) thereby resulting in damages to the party claiming breach." *Miller-Davis Co v Ahrens Const, Inc*, 495 Mich 161, 178; 848 NW2d 95 (2014).

In this case, there is no dispute that the lease was a contract between the parties. The trial court found that defendants breached the lease because Bocks asserted that SOF owned the color bar and reception desk. As discussed earlier, however, the color bar and reception desk were fixtures attached to the premises. Consequently, defendants owned the color bar and reception desk and did not breach the lease by asserting that SOF owned the color bar and reception desk. Thus, the trial court erred in finding defendants in breach of contract. See *Miller-Davis Co*, 495 Mich at 178. Accordingly, the trial court also erred in assessing $3,700 in damages for plaintiffs' costs in removing and storing the items because they were not entitled to those items. See *id*.

## D. DEFENDANTS' CONVERSION COUNTERCLAIM

Defendants argue that plaintiffs are liable for conversion because they removed the color bar and reception desk from the premises. We agree.

Plaintiffs removed the color bar and reception desk from the premises. As discussed earlier, however, defendants owned the color bar and reception desk.[3] By removing the color bar and reception desk from the premises, plaintiffs intentionally dispossessed defendants of their property. Consequently, plaintiffs are liable for common-law conversion. See *Aroma Wines & Equip, Inc*, 497 Mich at 351-352. Plaintiffs are additionally liable for statutory conversion because they removed the color bar and reception desk for their own use. See MCL 600.2919a; *Aroma Wines & Equip, Inc*, 497 Mich at 354-355 (holding that "someone alleging conversion to the defendant's 'own use' under MCL 600.2919a(1)(a) must show that the defendant employed the converted property for some purpose personal to the defendant's interests, even if that purpose is not the object's ordinarily intended purpose."). We remand to the trial court, however, to address the issue of damages and attorney fees defendants are entitled to as a result of plaintiffs' conversion of the color bar and reception desk.

---

[3] Defendants owned the color bar, but Rae Do owned the sink that was installed in the color bar.

## IV.  CONCLUSION

Reversed and remanded for further proceedings consistent with this opinion.  We do not retain jurisdiction.  Defendants, as the prevailing party, may tax costs pursuant to MCR 7.219.

/s/ Patrick M. Meter
/s/ Colleen A. O'Brien
/s/ Jonathan Tukel