*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

VERNISHA KEY,

        Plaintiff-Appellant/Cross-Appellee,

and

ARDREAL HOLMES, JOQUAN MCELROY,
DESMION HODO, and RYAN KEY, a minor, and
ZENOBIA HODO, a minor, by their next friend,
VERNISHA KEY,

        Plaintiffs-Appellants,

v

STONEMOR MICHIGAN, LLC, doing business as
FLINT MEMORIAL PARK, and STONEMOR
MICHIGAN SUBSIDIARY, LLC, doing business as
FLINT MEMORIAL PARK,

        Defendants-Appellees/Cross-
        Appellants,

and

LAWRENCE E. MOON FUNERAL HOME, INC.,

        Defendant.

UNPUBLISHED
November 9, 2021

No. 354763
Genesee Circuit Court
LC No. 19-113328-CD

Before: SWARTZLE, P.J., and SAWYER and LETICA, JJ.

PER CURIAM.

Vernisha Key's son, Desmond Savage, Jr., was murdered and she contracted with defendants[1] for Desmond's burial. Key was late for Desmond's burial and arrived after the sole family member present had told defendants they could begin to bury Desmond. Key and Desmond's siblings sued defendants, alleging that by prematurely burying Desmond they were liable for intentional infliction of emotional distress, wrongful interference with the right of burial, and breach of contract. The trial court granted summary disposition to defendants on the first two counts, but concluded that a dispute of material fact prevented any grant of summary disposition on the breach of contract claim. The trial court, however, dismissed that claim because it concluded that it lacked jurisdiction due to the amount in controversy. We affirm.

## I. BACKGROUND

Desmond, age 20, was the victim of a fatal drive-by shooting in Flint. Key arranged for Desmond's funeral service to be held at a funeral home operated by defendant Lawrence E. Moon Funeral Home, Inc. (Moon), and for Desmond to be buried at Flint Memorial Park, which defendants own and operate. Key signed an "Interment/Entombment Authorization and Indemnification" agreement form (the burial contract) provided by defendants authorizing Desmond's burial. The contract provided that the funeral would take place at Moon's funeral home at 11:00 a.m. on November 16, 2016, and that the "est. arrival at cemetery" was 1:00 p.m. Key paid defendants $1,100 for the opening and closing of the grave. The burial contract did not specify a burial time or include any instructions about Desmond's burial.

According to Key, Desmond's "burial and grave side service were scheduled to take place at approximately 1:30 PM, after completion of the viewing at Moon Funeral Home." Based on her meeting at Flint Memorial Park, Key understood that "the service was to take place around 1:30, upon the family's arrival" at the cemetery. Additionally, when Key arranged Desmond's burial she told defendants' family service counselor that she would not attend Desmond's funeral because of her emotional state, but that family members and a minister would attend.

On the day of Desmond's burial, Desmond's body arrived at Flint Memorial Park before 1:00 p.m. One family member who identified himself as either Desmond's uncle or great-uncle arrived at the gravesite about 10 to 15 minutes after Desmond's body arrived, but no other mourners arrived at that time. Defendants' employees and Desmond's great-uncle waited about 15 minutes before removing Desmond from the hearse; no other mourners had arrived at that point. Desmond's great-uncle told defendants' employees that he did not have any way to contact the rest of Desmond's family and he did not know if any other family members were coming. Defendants' employees then started the burial process and lowered Desmond in his grave and started filling it. Shortly after that process began defendants' employees learned that Key and her

---

[1] Plaintiffs' amended complaint named Lawrence E. Moon Funeral Home, Inc., as a defendant, but that party was dismissed by stipulation. Accordingly, we use the term "defendants" to refer to only StoneMor Michigan, LLC, and StoneMor Michigan Subsidiary, LLC.

family were running late, but that they would arrive soon. Defendants immediately stopped filling Desmond's grave.

Key arrived at the grave site at approximately 1:45 p.m. and saw "that the grave had been filled in" such that she could not see Desmond's casket. Key concluded that she had found the correct gravesite based on the presence of the shovels defendants had agreed to provide for the burial service. Plaintiffs eventually sued defendants and raised three claims: (1) wrongful interference with the right of burial based on Desmond's premature burial; (2) intentional infliction of emotional distress based on the same; and (3) breach of contract based on defendants burying Desmond before his mourners arrived for a graveside service. Later, the trial court entered an order clarifying that the breach-of-contract claim was raised only by Key.

The trial court granted defendants' motions for summary disposition of plaintiffs' claims of wrongful interference with the right of burial and intentional infliction of emotional distress, but denied summary disposition of Key's breach-of-contract claim. The trial court, however, ruled that Key could not recover emotional distress damages for the latter claim and then dismissed it because the $1,100 in contract damages Key was left pursuing fell below the circuit court's jurisdictional limit. This appeal and cross-appeal followed.

## II. ANALYSIS

Defendants moved for summary disposition under MCR 2.116(C)(8) and (10). "We review de novo a trial court's decision to grant or deny a motion for summary disposition." *Sherman v City of St Joseph*, 332 Mich App 626, 632; 957 NW2d 838 (2020) (citations omitted). MCR 2.116(C)(8) mandates summary disposition if "[t]he opposing party has failed to state a claim on which relief can be granted." *Harbor Watch Condo Ass'n v Emmet Co Treasurer*, 308 Mich App 380, 384; 863 NW2d 745 (2014).

> A motion under MCR 2.116(C)(8) tests the legal sufficiency of the complaint. All well-pleaded factual allegations are accepted as true and construed in a light most favorable to the nonmovant. A motion under MCR 2.116(C)(8) may be granted only where the claims alleged are so clearly unenforceable as a matter of law that no factual development could possibly justify recovery. When deciding a motion brought under this section, a court considers only the pleadings. [*Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999) (cleaned up).]

Thus, "[a] party may not support a motion under subrule (C)(8) with documentary evidence such as affidavits, depositions, or admissions." *Dalley v Dykema Gossett*, 287 Mich App 296, 305; 788 NW2d 679 (2010).

A motion for summary disposition under MCR 2.116(C)(10) tests the factual sufficiency of a complaint. *Joseph v Auto Club Ins Ass'n*, 491 Mich 200, 205-206; 815 NW2d 412 (2012). This Court reviews a motion brought under MCR 2.116(C)(10) "by considering the pleadings, admissions, and other evidence submitted by the parties in the light most favorable to the nonmoving party." *Patrick v Turkelson*, 322 Mich App 595, 605; 913 NW2d 369 (2018). "The trial court is not permitted to assess credibility, weigh the evidence, or resolve factual disputes, and if material evidence conflicts, it is not appropriate to grant a motion for summary disposition

-3-

under MCR 2.116(C)(10)." *Barnes v 21st Century Premier Ins Co*, ___ Mich App ___, ___; ___ NW2d ___ (2020) (Docket No. 347120); slip op at 4. Summary disposition "is appropriate if there is no genuine issue regarding any material fact and the moving party is entitled to judgment as a matter of law." *Patrick*, 322 Mich App at 605.

## A. INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Plaintiffs argue that the trial court's dismissal of their intentional infliction of emotional distress claim was erroneous. "To establish a prima facie claim of intentional infliction of emotional distress, the plaintiff must present evidence of (1) the defendant's extreme and outrageous conduct, (2) the defendant's intent or recklessness, (3) causation, and (4) the severe emotional distress of the plaintiff." *Walsh v Taylor*, 263 Mich App 618, 634; 689 NW2d 506 (2004). "Liability attaches only when a plaintiff can demonstrate that the defendant's conduct is so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized community." *Id.* (cleaned up).

"Initially, the trial court must determine whether a defendant's conduct qualifies as so extreme and outrageous as to permit recovery for intentional infliction of emotional distress." *Dalley*, 287 Mich App at 321. "But where reasonable individuals may differ, it is for the jury to determine if the conduct was so extreme and outrageous as to permit recovery." *Hayley v Allstate Ins Co*, 262 Mich App 571, 577; 686 NW2d 273 (2004). "Liability does not extend to mere insults, indignities, threats, annoyances, petty oppressions, or other trivialities." *Doe v Mills*, 212 Mich App 73, 91; 536 NW2d 824 (1995). Rather, "[t]he test to determine whether a person's conduct was extreme and outrageous is whether recitation of the facts of the case to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!' " *Lewis v LeGrow*, 258 Mich App 175, 196; 670 NW2d 675 (2003) (cleaned up).

In their amended complaint, plaintiffs alleged that defendants and Key agreed that Desmond would be buried at Flint Memorial Park on November 16, 2016, at 1:30 p.m., but that as Key was on her way to the burial she received telephone calls from relatives who informed her that Desmond had already been buried. When Key arrived at the cemetery at 1:45 p.m. she found that the burial was completed.

Plaintiffs argue that the trial court erred by dismissing their claim of intentional infliction of emotional distress because defendants' alleged act of burying Desmond before any mourners arrived constituted reckless disregard for the interests of Desmond's family. But, it is undisputed that a family member was at the burial service from the beginning. Moreover, while plaintiffs alleged that defendants buried Desmond before other mourners arrived, they did not allege that defendants otherwise failed to bury Desmond with the dignity and respect that should be afforded to the deceased. While an allegedly early, but otherwise proper, burial may be lamentable and worthy of sympathy for the disappointed mourners, we conclude that the alleged conduct, even when viewed in a light most favorable to plaintiffs, is not sufficiently extreme and outrageous to sustain an intentional infliction of emotional distress claim. *Lewis*, 258 Mich App at 196; *Doe*, 212 Mich App at 91. Thus, the trial court properly dismissed plaintiffs' intentional infliction of emotional distress claims.

## B. WRONGFUL INTERFERENCE WITH THE RIGHT OF BURIAL

Plaintiffs argue that the trial court erred by dismissing their wrongful interference with the right of burial claim. Over a century ago, our Supreme Court explained as follows:

> At the common law there was said to be no property in a dead body, and in one sense this may still be deemed an accurate technical statement; but it has been held in a number of well-considered American cases that the one whose duty it is to care for the body of the deceased is entitled to possession of the body, as it is when death comes, and that it is an actionable wrong for another to interfere with that right by withholding the body or mutilating it in any way. [*Doxtator v Chicago & WM Ry Co*, 120 Mich 596, 597; 79 NW 922 (1899).]

Therefore, "[r]ecovery for the refusal of the right to bury or for mutilation of the body is rather based upon an infringement of a right than upon the notion that the property of plaintiff has been interfered with." *Keyes v Konkel*, 119 Mich 550, 551; 78 NW 649 (1899). "The recovery in such cases is not for the damage to the corpse as property, but damage to the next of kin by infringement of his right to have the body delivered to him for burial without mutilation." *Id*.

More recently, our Supreme Court observed, "It seems to be settled by the great weight of authority that the unlawful and intentional mutilation of a dead body gives rise to a cause of action on behalf of the person or persons entitled to the possession, control, and burial of such body." *Deeg v Detroit*, 345 Mich 371, 375; 76 NW2d 16 (1956). In other words, "Michigan jurisprudence recognizes a common law cause of action on behalf of the person or persons entitled to the possession, control, or burial of a dead body for the tort of interference with the right of burial of a deceased person without mutilation." *Dampier v Wayne Co*, 233 Mich App 714, 728; 592 NW2d 809 (1999) (cleaned up).

Plaintiffs based their claim of "wrongful interference with the right of burial" on defendants burying Desmond before his mourners arrived. Plaintiffs rely on cases from other jurisdictions for the proposition that burying a body early and without proper ceremony entitles the decedent's relatives to relief. But those cases from other jurisdictions are not binding on this Court. We will not address those cases here because Michigan cases that we are bound to follow have already established the elements for interference with the right of burial.

Michigan courts have long held that a deceased is entitled to burial without mutilation and that a party cannot improperly withhold the decedent's body. See, e.g., *Doxtator*, 120 Mich at 597. Plaintiffs do not allege that Desmond's body was mutilated and, therefore, they are not entitled to relief on this theory. Accordingly, plaintiffs are entitled to relief on this ground only if they can show that defendants withheld Desmond's body.

In making this inquiry we first note that plaintiffs did not allege in their amended complaint that defendants withheld Desmond's body from plaintiffs. Indeed, there was no evidence that defendants did so. Under the burial contract's terms, Key authorized defendants to inter Desmond's body on November 16, 2016. Moon's employee testified that he delivered Desmond's body from the funeral home to defendants on that date, and there is no disagreement among the

witnesses that Desmond was indeed buried on that day. Consequently, defendants did not "withhold" Desmond's body within the usual meaning of that word.

Plaintiffs assert, in a cursory fashion, that defendants did not provide Desmond's body for burial because he was buried before his mourners arrived. But plaintiffs do not explain how Desmond's burial, which was authorized by Key and apparently accomplished free from any defects other than its timing, constituted a withholding of Desmond's body from burial. "If a party fails to adequately brief a position, or support a claim with authority, it is abandoned." *MOSES, Inc v SEMCOG*, 270 Mich App 401, 417; 716 NW2d 278 (2006). Thus, plaintiffs have not shown that defendants withheld Desmond's body from burial. Accordingly, the trial court did not err when it dismissed plaintiffs' wrongful interference with the right of burial claim.

## C. BREACH OF CONTRACT

Key next argues that the trial court erred by dismissing her breach-of-contract claim for lack of jurisdiction, and defendants argue on cross-appeal that the trial court erred by denying their motion for summary disposition of Key's contract claim. "Whether a lower court has subject-matter jurisdiction is a question of law that this Court reviews de novo." *Maple Manor Rehab Ctr, LLC v Dep't of Treasury*, 333 Mich App 154, 162; 958 NW2d 894 (2020). This Court reviews de novo questions of contract interpretation. *Burkhardt v Bailey*, 260 Mich App 636, 646; 680 NW2d 453 (2004).

### 1. DAMAGES AND JURISDICTION

"Circuit courts are courts of general jurisdiction, vested with original jurisdiction over all civil claims and remedies 'except where exclusive jurisdiction is given in the constitution or by statute to some other court . . . .' " *Papas v Gaming Control Bd*, 257 Mich App 647, 657; 669 NW2d 326 (2003), quoting MCL 600.605. "The district court has exclusive jurisdiction in civil actions when the amount in controversy does not exceed $25,000.00." MCL 600.8301(1). "As a rule, when a court of competent jurisdiction becomes possessed of a case, its authority continues until the matter is finally and completely disposed of, and no court of co-ordinate authority is at liberty to interfere with its action." *Zimmer v Byers*, 319 Mich 410, 416; 29 NW2d 838 (1947) (cleaned up).

"A court's subject-matter jurisdiction is determined only by reference to the allegations themselves, not the subsequent proceedings." *Luscombe v Shedd's Food Prod Corp*, 212 Mich App 537, 541; 539 NW2d 210 (1995). Nonetheless, a circuit court may dismiss a complaint that asserts damages in excess of $25,000 for lack of subject-matter jurisdiction when affidavits, depositions, admissions, or other documentary evidence show incontrovertibly that amount could not be proved because "the complaint would essentially be one pleaded in bad faith." *Meisner Law Group PC v Weston Downs Condo Ass'n*, 321 Mich App 702, 720; 909 NW2d 890 (2017).

Generally, the "recovery of damages for the breach of a contract is limited to those damages that are a natural result of the breach or those that are contemplated by the parties at the time the contract was made," and, therefore, "it is generally held that damages for emotional distress cannot be recovered for the breach of a commercial contract." *Lane v KinderCare Learning Ctrs, Inc*, 231 Mich App 689, 692-693; 588 NW2d 715 (1998). But

-6-

"damages for emotional distress may be recovered for the breach of a contract in cases that do not involve commercial or pecuniary contracts, but involve contracts of a personal nature." *Id*. at 693.

Our Supreme Court explained as follows:

> When we have a contract concerned not with trade and commerce but with life and death, not with profit but with elements of personality, not with pecuniary aggrandizement but with matters of mental concern and solicitude, then a breach of duty with respect to such contracts will inevitably and necessarily result in mental anguish, pain and suffering. In such cases the parties may reasonably be said to have contracted with reference to the payment of damages therefor in event of breach. Far from being outside the contemplation of the parties they are an integral and inseparable part of it. [*Stewart v Rudner*, 349 Mich 459, 471; 84 NW2d 816 (1957).]

"Examples of personal contracts include . . . a contract for the care and burial of a dead body . . . ." *Lane*, 231 Mich App at 693-694. And a plaintiff may "recover for mental anguish arising out of a breach of contract despite the lack of any physical injuries to plaintiff." *Avery v Arnold Home, Inc*, 17 Mich App 240, 243; 169 NW2d 135 (1969). This is because "the law protects interests of personality, as well as the physical integrity of the person, and that emotional damage is just as real (and as compensable) as physical damage." *Stewart*, 349 Mich at 467.

Key argues that the trial court erred by ruling that she could not recover emotional-distress damages for her contract claim, and therefore failed to appreciate that her claim for such damages kept her claim within the trial court's jurisdiction. Key is correct.

There is no dispute that Key's contract with defendants was a contract for the burial of the remains of a deceased person. As noted, this Court has recognized that "a contract for the care and burial of a dead body" qualifies as a personal contract subject to recovery of damages for emotional distress. *Lane*, 231 Mich App at 693-694. Thus, the trial court erred when it ruled that Key could not recover emotional distress damages for her breach-of-contract claim, and therefore it had subject matter jurisdiction over the matter.

### 2. SUMMARY DISPOSITION OF KEY'S CONTRACT CLAIM

On cross appeal defendants argue that the parol evidence rule should have barred consideration of plaintiffs' extrinsic evidence to vary the burial contract's terms and that they did not breach the contract by burying Desmond before Key and her family arrived. A breach of contract claim has three elements: "(1) that there was a contract, (2) that the other party breached the contract, and (3) that the party asserting breach of contract suffered damages as a result of the breach." *Doe v Henry Ford Health Sys*, 308 Mich App 592, 601-602; 865 NW2d 915 (2014). Defendants argue that they did not breach the burial contract because they were not required to wait until Key's arrival around 1:45 p.m. to bury Desmond.

Determining whether defendants breached the burial contract requires us to consider the contract's terms and conditions. "[C]ontracts must be read as a whole," *Kyocera Corp v Hemlock Semiconductor, LLC*, 313 Mich App 437, 447; 886 NW2d 445 (2015), giving "effect to every word, phrase, and clause," while taking pains to "avoid an interpretation that would render any

part of the contract surplusage or nugatory," *Klapp v United Ins Group Agency, Inc*, 468 Mich 459, 468; 663 NW2d 447 (2003). Accordingly, "[t]he construction or interpretation of written contracts consists in ascertaining the meaning of the parties, as expressed in the terms of the writing, according to the rules of grammar." *Pendill v Maas*, 97 Mich 215, 218; 56 NW 597 (1893).

The burial contract stated that a funeral service would take place at 11:00 a.m. and the "est. arrival at cemetery" was 1:00 p.m. The contract did not state a time for Desmond's burial and left the section titled "other special instructions/special equipment" blank. It is well-settled that "[w]hen a contract does not identify a time for performance, as this one did not, 'the law will presume a reasonable time.' " *Matter of Prichard's Estate*, 410 Mich 587, 592; 302 NW2d 554 (1981), quoting *Duke v Miller*, 355 Mich 540, 543, 94 NW2d 819 (1959). Whether a contractual obligation has been completed within a "[r]easonable time depends upon the facts and circumstances of each case." *Jackson v Estate of Green*, 484 Mich 209, 217; 771 NW2d 675 (2009) (cleaned up). "Where facts are in dispute, it presents a question of fact for the jury." *Reinforced Concrete Co v Boyes*, 180 Mich 609, 616; 147 NW 577 (1914). But when "the question of reasonable time depends, however, upon the construction of a contract in writing or upon undisputed facts outside of the contract, it becomes a matter of law." *Id*.

The burial contract itself does not provide instructions for what defendants were supposed to do if Desmond's mourners failed to arrive at 1:00 p.m. Similarly, the contract does not state how many mourners, if any, were expected. Key asserts that the burial was supposed to occur at 1:30 p.m. and that she informed defendants that she expected many mourners to be present at the burial. But all of that evidence is extrinsic because none of it appears in the burial contract. Extrinsic evidence is admissible to define ambiguous contract terms, *In re Smith Trust*, 480 Mich 19, 24; 745 NW2d 754 (2008), to determine whether a contract is fully integrated, *Schmude Oil Co v Omar Operating Co*, 184 Mich App 574, 580; 458 NW2d 659 (1990), and in instances of fraud, *UAW-GM Human Resource Ctr v KSL Recreation Corp*, 228 Mich App 486, 492-493; 579 NW2d 411 (1998). None of those circumstances apply here. The burial contract does not have an ambiguous burial time; rather, it simply does not specify a time for burial. A missing term is not the same as an ambiguous one. Additionally, Key has not made any argument that the contract was not fully integrated or that it was fraudulent. Thus, we must determine whether Desmond was buried in a reasonable time based on the contract's terms and the undisputed events on the date of Desmond's burial.

On the day of Desmond's burial his body arrived before 1:00 p.m., but only one relative arrived between then and at least 1:30 p.m. That relative was present at the burial site and eventually gave defendants' employees permission to bury Desmond because he did not know if any other mourners were coming. Based on the written contract defendants had no contrary information; they also had no instructions from that document that they should wait a specific amount of time before burying Desmond. Accordingly, defendants waited about half an hour, obtained consent to bury Desmond from the one relative who was present, and then complied with that relative's request to bury Desmond. Burying Desmond after waiting about half an hour was certainly reasonable given that defendants' employees had no knowledge regarding if or when other mourners would arrive. Additionally, defendants' employees stopped burying Desmond as soon as they were told that Key and her family were coming to the burial. Defendants did not breach the contract's plain language.

We acknowledge that the circumstances of this case are lamentable, but when parties enter into a written contract, that document controls over even contrary oral statements. Even reading the record in the light most favorable to Key, we conclude that defendants buried Desmond within a reasonable time and did not breach the burial contract. The trial court erred by concluding that a dispute of material fact existed on this issue, but it nevertheless correctly dismissed Key's breach of contract claim. Thus, we affirm the trial court's dismissal of Key's breach of contract claim, albeit on different grounds than those given by the trial court.

## III. CONCLUSION

For the reasons stated in this opinion, we affirm the trial court's order granting summary disposition to defendants and dismissing plaintiffs' claims.

/s/ Brock A. Swartzle
/s/ David H. Sawyer
/s/ Anica Letica