*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

CALLIDUS CAPITAL CORPORATION,

UNPUBLISHED
April 4, 2024

Plaintiff-Appellant,

v

No. 363785
Wayne Circuit Court
LC No. 21-010889-CB

GENERAL MOTORS HOLDINGS, LLC, and
GENERAL MOTORS, LLC,

Defendants-Appellees.

Before: GARRETT, P.J., and RIORDAN and LETICA, JJ.

PER CURIAM.

In this breach-of-contract action, plaintiff appeals as of right the trial court's order granting summary disposition to defendants (collectively "GM") pursuant to MCR 2.116(C)(8). We affirm.

## I. FACTS

Plaintiff is a lender and financing corporation that made numerous loans to JD Norman Industries, Inc. (JDN). Prior to this lawsuit, JDN was a Tier II supplier of component automotive parts for GM. JDN received Tier III parts from American Axle & Manufacturing (AAM), used those parts to build and supply Tier II parts to Federal-Mogul Powertrain, Inc. ("Tenneco"), and then Tenneco would supply Tier I parts directly to GM. GM offers the following visual summary of the supply chain as it originally existed:

On February 18, 2020, GM entered a Long-Term Supply and Accommodation Agreement (LTSA) with plaintiff and JDN in which GM agreed not to resource its Tier II part orders from JDN to another supplier for a term of three years, unless a permitted resourcing event occurred,

-1-

such as a breach of the LTSA. However, under the LTSA, GM was permitted to take any action it deemed necessary to prepare for resourcing with alternative suppliers, including signing binding contracts with alternative suppliers.

On February 28, 2020, GM entered a nomination agreement with AAM, stating that "GM [would] recommend AAM . . . as the Tier [II] supplier" for the parts that JDN was supplying at the time. The letter directed AAM to enter into a contract with Tenneco to supply Tier II parts to Tenneco. Importantly, the nomination agreement included the following sentence: "[a] representative of Tier [I] Supplier will be contacting you to begin the necessary process of entering into a contract with you as a Tier [II] supplier." The nomination agreement stated it was a "binding contract" between GM and AAM.

By November 2020, JDN had experienced multiple production issues, and was not consistently meeting its production requirement. On January 31, 2021, AAM ceased supplying JDN with the Tier III parts that JDN needed to manufacture its Tier II parts for GM. Consequently, JDN was no longer able to produce the Tier II parts, and GM began buying the Tier II parts from AAM.

Plaintiff filed a complaint claiming that GM breached the LTSA when it signed the nomination agreement with AAM because the nomination agreement constituted a prohibited "resourcing."[1] The trial court concluded that the nomination agreement did not constitute a resourcing, and that the express terms of the LTSA authorized GM to enter into contracts like the nomination agreement. Consequently, the trial court granted GM summary disposition under MCR 2.116(C)(8).

## II. DISCUSSION

On appeal, plaintiff argues that the trial court erred by granting GM's motion for summary disposition because plaintiff alleged facts sufficient to state an actionable claim that GM breached the parties' agreement by resourcing production to another supplier without a proper contractual basis to do so. We conclude that the trial court did not err when it granted GM summary disposition because plaintiff's pleading did not identify a claim on which relief could be granted.

"We review de novo a trial court's decision on a motion for summary disposition." *El-Khalil v Oakwood Healthcare, Inc*, 504 Mich 152, 159; 934 NW2d 665 (2019). "A motion under MCR 2.116(C)(8) tests the legal sufficiency of a claim based on the factual allegations in the complaint." *Id*. (emphasis omitted). "A motion under MCR 2.116(C)(8) may only be granted when a claim is so clearly unenforceable that no factual development could possibly justify recovery." *Id*. "When deciding a motion under [MCR 2.116(C)(8)], this Court accepts all well-pleaded factual allegations as true and construes them in the light most favorable to the nonmoving party." *Dalley v Dykema Gossett*, 287 Mich App 296, 304-305; 788 NW2d 679 (2010). A trial

---

[1] Plaintiff maintained other claims in its complaint, but only the breach-of-contract claim is at issue on appeal.

court must decide an MCR 2.116(C)(8) motion on the pleadings alone. *El-Khalil*, 504 Mich at 160.

Documents attached to a complaint are considered part of the pleadings, and thus, are reviewable by a court ruling on a summary disposition motion under MCR 2.116(C)(8). *Id*. at 163. "If a claim or defense is based on a written instrument, a copy of the instrument or its pertinent parts must be attached to the pleading . . . ." MCR 2.113(C)(1). Generally, when an instrument is required to be attached under MCR 2.113(C)(1), it is part of the pleading "for all purposes." MCR 2.113(C)(2). Nevertheless, even when attached to a complaint, the assertions in an attached written instrument may not be taken as true unless adopted by the plaintiff. See *El-Khalil*, 504 Mich at 163.

Preliminarily, since plaintiff attached the LTSA and nomination agreement to its first amended complaint and adopted both as true, authentic instruments, both documents are considered part of the pleading with respect to the MCR 2.116(C)(8) motion. *Id*. Since both documents are part of the pleading, the trial court was permitted to analyze both when determining whether plaintiff stated a claim on which relief could be granted. Consequently, the trial court was permitted to analyze the LTSA and nomination agreement to determine whether the nomination agreement constituted a resourcing. Furthermore, for the reasons that follow, we agree with the trial court's conclusion that the nomination agreement was not a resourcing.

"The goal of contract interpretation is to read the document as a whole and apply the plain language used in order to honor the intent of the parties. We must enforce the clear and unambiguous language of a contract as it is written." *Greenville Lafayette, LLC v Elgin State Bank*, 296 Mich App 284, 291; 818 NW2d 460 (2012) (citations omitted).

Our discussion first begins with what GM was not permitted to do under the LTSA:

> (A) During the Term of this Agreement, each Customer will (i) not resource production of any Restricted Component Parts to an alternative supplier(s) or (ii) in the event a Customer is dual sourced on certain Restricted Component Parts, such Customer shall not reduce its current allocation of production of the Restricted Component Parts between the Supplier and the dual sourced supplier, in each case, as set forth on <u>Schedule 2.5(A)</u> for each Customer (each, a "**Resourcing**"), except for a Permitted Resourcing (as defined below) (the "**Resourcing Limitation**"), subject to each Customer providing notice to Supplier of a Permitted Resourcing Event (as defined below) as soon as practicable after the occurrence thereof.

Thus, GM essentially agreed that, in the absence of a permitted resourcing event, it would not remove any business from current suppliers, whether that involved a resourcing—withdrawing part orders from one supplier and directing them to another supplier—or redistribution of part orders between preexisting dual suppliers.

However, in the next paragraph, GM reserved its ability to prepare for resourcing:

> (B) Notwithstanding the foregoing, each Customer may take any action that it deems necessary, in its sole discretion, to prepare for a resourcing of production

of its Component Parts or programs on contract with Supplier, including, without limitation: (a) discussing, negotiating, and executing agreements with an alternative supplier(s); or (b) purchasing sample or prototype Component Parts from an alternative supplier(s). . . .

Accordingly, since GM reserved the right to execute agreements with alternative suppliers in preparation for resourcing its component parts, including the Tier II parts that JDN was supplying, GM's nomination agreement with AAM, although it constituted a binding contract with an alternative supplier, did not automatically violate the LTSA.

The key issue in this case is whether the nomination agreement constituted a resourcing. Plaintiff argues that "GM made its decision to resource when it entered into the nomination agreement," and in so doing, GM breached the LTSA. We disagree. As discussed earlier, the parties' use of the term "resourcing" refers to the act of removing part orders from one supplier and giving them to another.[2] GM sourced its Tier II parts from JDN until February 1, 2021, when JDN was no longer able to supply the Tier II parts. Since GM continued sourcing its Tier II parts from JDN until JDN became unable to supply the Tier II parts, the nomination agreement, signed nearly a year before GM resourced its Tier II parts to AAM, did not constitute a resourcing, but rather, was executed in preparation for resourcing.[3]

Indeed, the nomination agreement stated that GM would, at some point in the future, recommend AAM as the Tier II supplier for the parts that JDN was producing at the time, and directed AAM to negotiate a contract with Tenneco so that, at some point in the future, AAM could supply Tenneco with Tier II parts. Nothing in the supply chain was altered when the nomination agreement was made. Notably, GM could not have resourced its Tier II parts when it signed the nomination agreement because, by its own terms, resourcing could not occur until AAM and Tenneco negotiated a contract.

Even if GM entered the nomination agreement with the intent to resource production of Tier II parts to AAM, the fact remains that GM continued to source its Tier II parts from JDN until JDN became unable to produce Tier II parts. GM only resourced its Tier II parts to AAM after JDN became unable to produce Tier II parts, thereby creating a permitted resourcing event by its breach of the LTSA. Hence, it is evident that the nomination agreement was nothing more than an agreement made in preparation of resourcing, which GM was expressly permitted to do under the LTSA.

This conclusion is consistent with the trial court's ruling. The trial court held that, in its complaint, plaintiff failed to state how GM's nomination agreement with AAM breached the

---

[2] Plaintiff repeatedly indicates in its brief on appeal that a "resourcing" occurred by "replacing JD Norman in the supply chain." We generally agree with this characterization of "resourcing," although we disagree that it occurred with the execution of the nomination agreement.

[3] We note that the LTSA provides that a "**Permitted Resourcing**" may occur "after Supplier breaches any of its obligations to a Customer . . . ." Here, once JDN was unable to supply Tier II parts, GM was permitted to resource to AAM.

-4-

LTSA, thereby failing to state a claim on which relief could be granted. Importantly, the trial court concluded that the plain language of the LTSA permitted GM to enter the nomination agreement with AAM because the nomination agreement was not a resourcing. The trial court reasoned that the nomination agreement could not be a resourcing because, by its own terms, it required a subsequent contract between AAM and Tenneco before a resourcing could occur.

Pursuant to MCR 2.116(C)(8), summary disposition is appropriate where the "opposing party has failed to state a claim on which relief can be granted." Plaintiff premised its cause of action on GM's alleged breach of the LTSA when it entered the nomination agreement with AAM. However, as discussed earlier, the documents plaintiff incorporated into its pleading, the LTSA and nomination agreement, demonstrate that GM was permitted to enter the nomination agreement with AAM. Plaintiff's characterization of the nomination agreement as a resourcing was not supported by the LTSA or nomination agreement, and thus, its unsupported characterization was insufficient to allege a cause of action on which relief could be granted. See *Varela v Spanski*, 329 Mich App 58, 79; 941 NW2d 60 (2019) ("A mere statement of a pleader's conclusions and statements of law, unsupported by allegations of fact, will not suffice to state a cause of action."). Stated differently, plaintiff failed to allege a cause of action on which relief could be granted because the documents it incorporated in its pleading demonstrate that GM did not breach the LTSA. Therefore, we conclude that the trial court did not err when it granted GM's summary disposition motion under MCR 2.116(C)(8).[4]

### III. CONCLUSION

The trial court correctly dismissed plaintiff's breach-of-contract claim. We affirm.

/s/ Kristina Robinson Garrett
/s/ Michael J. Riordan
/s/ Anica Letica

---

[4] Plaintiff suggests that the LTSA is ambiguous, which precludes summary disposition. We disagree. "A contractual term is ambiguous on its face only if it is equally susceptible to more than a single meaning." *Kendzierski v Macomb Co*, 503 Mich 296, 311; 931 NW2d 604 (2019) (quotation marks and citation omitted). "In addition, if two provisions of the same contract irreconcilably conflict with each other, the language of the contract is ambiguous." *Id*. (quotation marks and citation omitted). The provisions of the LTSA in question were not equally susceptible to more than a single meaning, nor did they irreconcilably conflict with each other. Rather, as explained herein, the LTSA unambiguously permitted GM to enter into the nomination agreement, which was an agreement made in preparation of resourcing.